RHODE ISLAND HOSPITAL TRUST COMPANY *vs.*
LOUIS H. C. HUNTOON *et al.*

JUNE 7, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This is a bill in equity for the construction of and instructions relative to the last will and testament of Louis H. Comstock, late of the town of East Greenwich, deceased. When the cause was ready for hearing in the superior court for final decree that court in accordance with the provisions of G. L. 1956, §9-24-28, duly certified it to this court for our determination.

The testator died on March 28, 1922, leaving as next of kin his son Fred Schuyler Comstock and two grandchildren, William C. Huntoon and Louis H. C. Huntoon, the children of his daughter Mary Huntoon who died in 1905. In his will dated January 4, 1911, after making several gifts which are not directly involved in this proceeding, the testator made certain provisions for the benefit of his son and two grandchildren.

In clause fifth he gave one half of his residuary estate outright to his son. In clause sixth he created a trust for the benefit of his two grandchildren which reads as follows:

"Sixth: In case my said son may be living at the time of my decease I give devise and bequeath the other one-half of the remainder of my estate and in case of his decease before my own (leaving no lineal descendant) I give devise and bequeath said homestead and all of the remainder of my estate (excepting said bequests and annuities) to said Rhode Island Hospital Trust Company but in trust nevertheless for the following uses and purposes * * *."

After providing therein for the payments of taxes and other necessary expenses, he directed the trustee to use the residue of the income therefrom, or so much thereof as in the discretion of the trustee was necessary, "for the comfortable support maintenance and education of my grandchildren Louis H. C. Huntoon and William C. Huntoon, Junior."

With respect to the principal of the trust he provided as follows: "Two thirds of this one-half shall remain in said trust during the lifetime of my said grandchildren. The

other one-third of this one-half shall be paid to them as follows: When each may arrive at the age of twenty-one years there shall be paid to him one-fourth of said one-third of one-half and on arriving at the age of thirty years the other one-fourth of said one-third of one-half."

Clause eighth provides that if either of the grandchildren dies leaving no lineal descendant, the other grandchild shall receive the share of the one so dying. Clause ninth provides that if both grandchildren die leaving no lineal descendant, the trust estate shall pass to the testator's son, if then living, "free of all of the said trusts to my said grandchildren to him his heirs and assigns." And clause tenth provides that if his son and grandchildren die without leaving any lineal descendant all of the property remaining shall pass to the testator's brothers "to them their heirs and assigns."

After the testator's death his son received his one-half share of the residuary estate under the will. He died on June 13, 1948, leaving no lineal descendant. He disposed of his property by trust deed and will. Certain of respondents have an interest in his estate by virtue of such indenture of trust.

The complainant divided the trust into two equal shares and has administered it as two separate trusts. The income from each trust has been paid to each of the grandchildren regularly and each has received the payment of principal due upon attaining his twenty-first and thirtieth birthdays. On June 7, 1961, one of the grandchildren, William C. Huntoon, died, leaving two daughters, Marcia E. Huntoon and Abby E. Huntoon. The other grandson, Louis H. C. Huntoon, is still living and has children and grandchildren.

The questions presented by this bill arise as a result of the death of William C. Huntoon leaving lineal descendants. The will contains no express language covering this situation. The complainant, as trustee, is in doubt as to the proper disposition of the income and the balance of the

principal of that portion of the trust estate from which the deceased grandchild received the income during his lifetime. It has brought this bill in order to ascertain who is entitled thereto and therefore requests an answer to the following questions:

"1. As to whether the part of the trust from which William C. Huntoon received the income during his lifetime terminated on his death; and, if so, as to how the principal thereof should now be distributed by the trustee; and

"2. If said part of the trust did not terminate on the death of William C. Huntoon as to which persons are now entitled under the will to receive the income therefrom and in what proportions and for how long; and

"3. If said part of the trust did not terminate on the death of William C. Huntoon, when said part of the trust does terminate, to which persons and in what proportions is the principal thereof to be then distributed."

It appears from the record that all interested persons have been made parties respondent and that the cause is otherwise properly before us. It may be helpful to point out that the above questions relate solely to the income and the balance of the principal of that portion of the trust estate from which William C. Huntoon received the income during his lifetime.

The primary rule in construing a will is that the intent of the testator, if ascertainable and lawful, must govern and that such intent must be ascertained if possible from a consideration of the whole will. *Rhode Island Hospital Trust Co.* v. *Sanders,* 84 R. I. 347, 353. The first question is whether the trust terminated upon the death of William C. Huntoon. This depends upon what the testator intended by the provision in clause sixth that "Two thirds of this one-half shall remain in said trust during the lifetime of my said grandchildren." At first glance the words "during the lifetime of my said grandchildren" would seem to indicate that he intended the trust to continue until the death

of the surviving grandchild. However, when read in the context of the will as a whole, such words create an ambiguity because it is clear from the language of the will that the testator intended to create two separate and equal trusts for his grandchildren.

This conclusion is supported by his express language in clause ninth where he referred to the trust estate as "trusts," thus clearly indicating his intent to establish two separate trusts for his grandchildren. His expressed purpose in establishing the trusts was to provide "for the comfortable support maintenance and education" of the grandchildren. Although he did not expressly provide that the income was to be divided equally, a reading of the will as a whole clearly indicates that the dominant intent of the testator was to treat them equally in every respect.

In clause eighth he expressly provided that the surviving grandchild was to receive the share of the deceased grandson if the latter died without leaving lineal descendants. He was clearly referring to the deceased grandchild's share of income. He made no express provision for the disposition of the income if a grandchild died leaving lineal descendants. Moreover, there is no language in the will indicating a clear intent to have the trust in question continue during the lifetime of the surviving grandchild if the first grandchild died leaving lineal descendants. Nor is there any language indicating an intent that in such circumstances the income should go to the surviving grandson; or to the estate of the deceased grandson; or that it should be accumulated for any purpose; or that it was to pass by intestacy.

For these reasons it is our opinion that in using the words "during the lifetime of my said grandchildren" the testator intended that upon the death of a grandchild leaving lineal descendants, the trust applicable to such grandchild was to terminate and the principal thereof was to be distributed

to the ultimate beneficiaries. See 3 Jarman on Wills (5th Am. ed.) 16; see also Brown's Estate, 343 Pa. 19, 26.

As we have already stated, although the testator expressly provided for the disposition of the trust estate created in clause sixth in the event that either of his grandchildren died leaving no lineal descendant, he did not expressly provide for such disposition in the event that either grandchild died leaving lineal descendants. There is disagreement among respondents as to whether there is any language in the will clearly indicating what intent, if any, the testator had with respect to the contingency which has actually occurred.

Certain of the respondents argue that there is no language in the will from which any intent can be inferred and that therefore the estate must pass as intestate property. Other respondents contend that the language of the will clearly indicates a gift by implication to the children of William C. Huntoon. The remaining respondents argue that the trust continue until the death of Louis H. C. Huntoon; that he should receive the income therefrom during his lifetime; and that after his death the trust should terminate and the trust estate should pass by intestacy.

The testator's intent, if any there be, must be ascertained if possible from a consideration of the whole will. In construing the will we are aided by certain well-settled rules of construction and presumptions of law. One of these is the presumption against intestacy. This doctrine was clearly set forth in *Rhode Island Hospital Trust Co.* v. *Thomas*, 73 R. I. 277, 284, in the following language: "A construction that would lead to total or partial intestacy should be avoided unless it is required by language clearly appearing in the will or by positive rules of law. There is a general presumption against a testator's intending partial intestacy and that is greatly strengthened when we are dealing, as here, with the residuary clause." See also *Pell* v. *Mercer*,

14 R. I. 412, 427; *Dunham* v. *Randall*, 51 R. I. 55; *Edwards* v. *Martin*, 54 R. I. 64, 67; *Hogan* v. *Taylor*, 64 R. I. 471.

Although generally gifts by implication have not been favored by courts, it is recognized that such gifts do arise in certain cases in order to carry out the manifest intention of the testator as ascertained by an examination of the whole will. *Willoughby* v. *Willoughby*, 66 R. I. 430. But in such cases the gift by implication must be founded upon some expression in the will from which such intention can be inferred. *Industrial Trust Co.* v. *Taylor*, 69 R. I. 153, 156.

A careful reading of the whole will and the general scheme of testator's disposition of his estate therein clearly shows a dominant intent to dispose of all his residuary estate among the members of his family, primarily between his son and the children of his daughter, and collaterally between his brothers only if his son and grandchildren die without leaving lineal descendants. Keeping in mind such dominant intent and general scheme, as well as the fact that he expressed no intention to disinherit the lineal descendants of his grandchildren, it is our opinion that the language of the will taken as a whole, by necessary implication, clearly indicates that by expressly providing for a gift over in the event a grandson died without leaving lineal descendants, the testator intended that if a grandson died leaving lineal descendants, such descendants would receive the principal.

Our conclusion is a compelling and irresistible inference from the language used by the testator in clause sixth, eighth, ninth and tenth; it is not based on mere speculation or conjecture. *Willoughby* v. *Willoughby, supra* at 438. In view of the testator's express language and the general scheme of disposition evidenced by the will, it is our opinion that an intention contrary to that which we have found "cannot be supposed." *Matteson* v. *Brown*, 33 R. I. 339, 351.

Indeed, our conclusion in the case at bar is in conformity with what now appears to be the prevailing view and an accepted rule of will construction that where there is a gift to B for life, with the remainder to C if B dies without issue, a gift by implication arises as to the issue of B, should B die leaving issue, unless a contrary intention is expressed by the testator. Restatement, Property §272; Rouse Estate, 369 Pa. 568; *Shepherd* v. *Peratino,* 182 F.2d 384; *Wilkins* v. *Miltimore,* 95 N. H. 17; *Vittitow* v. *Keene,* 265 Ky. 66; *Robinson* v. *Barrett,* 142 Kan. 68.

The reason for the rule is stated as follows in 2 Simes, Future Interests §434, p. 255: "In the majority of cases, it would seem that the only rational explanation for the gift over on death of the life tenant without children is that the testator intended the children to take if the life tenant died with children."

Our conclusion therefore is that the part of the trust from which William C. Huntoon received the income during his lifetime terminated on his death, and that the principal thereof is now payable by the trustee in equal shares to Marcia E. Huntoon and Abby E. Huntoon, the daughters of William C. Huntoon. On the view that we have taken we do not reach the second and third questions.

On June 18, 1962, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Tillinghast, Collins & Tanner, Colin MacR. Makepeace,* for complainant.

*Edwards & Angell, Bancroft Littlefield, Ronald R. Lagueux,* for respondents Louis H. C. Huntoon et al. and Bancroft Littlefield, Guardian ad litem.

*John H. Chafee,* for respondents Rhode Island Hospital Trust Company et al., Exr's u/w William C. Huntoon.

*Lee A. Worrell,* Guardian ad litem, for minor respondents Marcia E. Huntoon and Abby E. Huntoon.

*Gardner, Sawyer, Cottam & Gates, Charles F. Cottam,* for respondents Rhode Island Hospital Trust Company et al., Trustees u/trust indenture of Fred S. Comstock.

*Edward L. Godfrey,* Guardian ad litem, for minor respondents Carolyn J. Fowler et al.