264 A.2d 18.

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND, *Trustee* vs. FRANCES W. BUDLONG *et al.*

APRIL 8, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.   This civil action seeking instructions concerning two trusts created by Milton J. Budlong, deceased, hereinafter referred to as "decedent," was certified to this court by the Superior Court pursuant to the provisions of G. L. 1956, §9-24-28, as amended by P. L. 1965, chap. 55,

sec. 41. One of these trusts the decedent created by an indenture of trust dated July 1, 1929, and is hereinafter referred to as "the 1929 trust." The second was created by the decedent in his last will and testament dated October 19, 1938, and is hereinafter referred to as "the testamentary trust." The decedent died a resident of Newport on July 5, 1941.

The facts are not in dispute. The decedent died survived by three children, a daughter, Frances W. Budlong, and two sons, Milton J. Budlong and John Budlong. Frances and Milton still survive, but the decedent's son John died and is survived by a son John. All of these lineal descendants are income beneficiaries under the provisions of both of the trust instruments. The decedent's grandson John now shares per stirpes in his deceased father's portion thereof.

The defendants are Frances W. Budlong, the daughter, who now lives in Phoenix, Arizona; the First National Bank of Arizona as guardian of Milton J. Budlong of Arizona, who is incompetent and living in that state; and the decedent's grandson John Budlong of New York City. Also a defendant is the First National Bank of Arizona in its capacity as executor and trustee under the will of Jessie Margaret Wilson Budlong, decedent's former wife, who died in Arizona in 1962 and who was an income beneficiary under the testamentary trust only. In addition, Trinity Church and Newport Hospital are named as defendants, each having a contingent interest under the 1929 trust. A guardian ad litem has been appointed to represent any contingent or unascertained interests which might arise under these instruments.

Each trust provides for the payment of the income of the pertinent trust created therein to the beneficiary thereof for life. Each trust also contains protective provisions, so called, which, in substance, provide that, in the event that any beneficiary attempts to anticipate or alienate his

or her beneficial interest in the trust or if such beneficial interest is sought to be taken by legal process, the beneficiary's right to receive such income shall cease, and thereafter it shall be within the sole discretion of the trustee to pay such income, in whole or in part, to said beneficiary for his or her benefit at such times as he might deem advisable or, in the case of the testamentary trust, in whole or in part to the beneficiary, to or for the support and benefit of the beneficiary or to the corpus of the trust.

On July 14, 1952, the Internal Revenue Service served upon plaintiff, as trustee of the testamentary trust, a notice of levy applicable to all properties and monies in the trustee's possession belonging to Jessie Margaret Wilson Budlong, one of the beneficiaries thereof. The levy was released by the Internal Revenue Service on April 3, 1964. It is not disputed that the trustee did not pay Jessie (a) any income of the testamentary trust on hand on July 14, 1952, (b) any income arising between July 14, 1952, and November 23, 1962, or (c) any income arising between said dates from reinvestment of income not paid to her. All of the income that has not been paid to Jessie has been held by the trustee in an account maintained especially for that purpose and referred to as the "withheld account." The First National Bank of Arizona, as executor and trustee of the estate of Jessie, now makes demand for the money deposited in the withheld account.

Again, on October 24, 1958, the Internal Revenue Service served upon plaintiff, as trustee, notice of levy applicable to the properties and monies held by the trustee belonging to Frances W. Budlong, who is a beneficiary under both the 1929 trust and the testamentary trust. The levy was released by the Internal Revenue Service on September 28, 1964. As in the case of Jessie, the trustee has not paid to Frances (a) any of the income of the 1929 trust or the testamentary trust on hand on October 24, 1958, (b) any

income arising from either trust between October 24, 1958, and December 31, 1963, or (c) any income arising between said dates from the reinvestment of income not paid to Frances. All of the amounts not paid to Frances have been deposited in a so-called withheld account by the trustee and are now the subject of a demand by Frances.

The questions certified to this court as set out in the trustee's complaint will be stated in express terms later in this opinion. They inquire, however, as to the right of the First National Bank of Arizona, as testamentary trustee under the will of Jessie Margaret Wilson Budlong, to any part of the withheld income of the testamentary trust and, if it has no such right, whether the trustee has a discretionary power to pay any part of that income to said bank as trustee under the will of Jessie Margaret Wilson Budlong. Inquiries of similar character are made with respect to the right of Frances W. Budlong to any part of the withheld income from the 1929 trust and the testamentary trust and, if she has no right thereto, whether the trustee has discretion to pay any part thereof to Frances W. Budlong.

The plaintiff urges, however, that the issues confronting this court are, first, whether the protective provisions of the 1929 trust providing for a cessation, under certain conditions, of the beneficiary's right to the income thereof were valid in that a discretionary trust would be created when the protective provisions became operative; second, whether the service of notice of tax levies upon the trustee with respect to each trust operated so as to give effect to the protective provisions of the 1929 trust and the testamentary trust and, by establishing a discretionary trust, to deprive both Jessie Margaret Wilson Budlong and Frances W. Budlong of any right to that income; third, if the second issue were decided in the affirmative and a discretionary trust did arise under the terms of both instruments, (A) did the trustee, by creating and administering the

"withheld accounts" for the sums which otherwise would have been paid to Frances and Jessie, "pay over to" either beneficiary the sums in the "withheld accounts" or any part of them, and (B) did the trustee, by creating and administering the "withheld accounts," expend said sums or any part thereof for the use and benefit of either of the beneficiaries.

## I. The 1929 Trust

We turn, then, to the question of whether the protective provisions of the 1929 trust are sufficient, when operative, to create a discretionary trust that would be valid and enforceable. The 1929 trust in fact established five separate trusts, only three of which are here involved. Frances W. Budlong, a daughter of the decedent, was the income beneficiary of one of these trusts; John Budlong, a son of the decedent, now deceased and the father of the present defendant John Budlong of New York, was the income beneficiary of another of these trusts; and still another inured to the benefit of Milton Joseph Budlong, the decedent's incompetent son of whose estate First National Bank of Arizona is guardian. All of these are referred to in the trust indenture as " 'principal beneficiaries,' " and the trustee is directed to pay over to defendant Frances W. Budlong all of the net income of the trust for her benefit and to pay over to each principal beneficiary who was a son of the decedent all of the net income of the trust for his benefit.

These provisions of the 1929 trust, however, were made subject to certain protective provisions, so called, set out in the second clause of the indenture as follows: "* * * provided that if any of said principal beneficiaries shall assign, encumber or purport to assign or encumber his or her beneficial interest in the trust established for his or her benefit, or if any creditor of either of them shall attempt to reach such beneficial interest by legal process, or in case of the

bankruptcy of any of them, his or her respective right to receive such net income in accordance with the foregoing shall thereupon cease and said trustee shall thereafter pay over to and/or expend for his or her benefit, as the case may be, such part (or all) of the net income of the trust for his or her respective benefit as in each case said trustee in his discretion shall from time to time deem advisable."

In Rhode Island we have long followed the minority rule that a spendthrift trust, so called, is invalid. A spendthrift trust is one in which, by direction of the settlor, the right of the beneficiary to payments from the trust fund or the income thereof is not transferable by him nor liable to be taken from him for satisfaction of his debts. Bogert, *Trusts and Trustees* (2d ed.), §221, at 623.

In 1858 in *Tillinghast* v. *Bradford*, 5 R. I. 205, this court, speaking through Chief Justice Ames, held that a trust containing a spendthrift clause was invalid unless it contained provisions for a gift over. The Chief Justice therein said that restraints on alienability are so opposed to the nature of property and immunity from liability for payment of debts is so opposed "* * * to the honest policy of the law,—as to be totally void, unless, indeed, which is not the case here, in the event of its being attempted to be aliened, or seized for debts, it is given over by the testator to some one else." 5 R. I. at 212.

In *Smyth, for an Opinion,* 49 R. I. 27, some seventy years later, this court clearly reaffirmed the position taken in *Tillinghast.* In express terms it gave approval to the rule prevailing in England and followed in most of the jurisdictions of this country. While under that rule the spendthrift provisions in a trust are invalid, such a trust can be saved by converting it into a discretionary trust, so called. The court said: "The courts of this State have consistently followed the English rule and held spendthrift trusts invalid when, as in this case, upon a breach of the conditions named in the trust instrument there is no forfeiture, no

limitation over, no condition of cessor and no discretion in the trustee as to the payment of the income to the *cestui que trust.*" 49 R. I. at 31.

In that opinion this court stated that the English rule is that a vested equitable estate for life is alienable and liable for the debts of the beneficiary notwithstanding that there is an express provision in the trust instrument to the contrary, and that a clause prohibiting alienation or the taking for the debts of the beneficiary is totally void unless "* * * the trust instrument provides, in the event of an attempt to alienate or seize for debts, for a cessation of the equitable estate, or gives the income over to someone else." 49 R. I. at 30.

The question with which we are confronted here is whether the 1929 trust, which gave to Frances an equitable life estate in the income thereof, provided that if she were to assign or encumber her beneficial interest in the trust, or if any creditor were to attempt to reach such beneficial interest by legal process, her respective right to receive such net income in accordance with the provisions of the trust "* * * shall thereupon cease and said trustee shall thereafter pay over to and/or expend for his or her benefit, as the case may be, such part (or all) of the net income of the trust for his or her respective benefit as in each case said trustee in his discretion shall from time to time deem advisable." We must now decide whether the protective provisions of this trust, upon becoming operative, would create a discretionary trust as contemplated by the English rule.

In *Tillinghast* the court held simply that the spendthrift provision was totally void unless, in the event of an attempt to alienate or seize for debts, "it is given over by the testator to some one else." In *Smyth* the court simply referred to the English rule and held that such spendthrift clauses in a trust are invalid where, upon a breach of the conditions named in the instrument, "* * * there is no forfeiture,

no limitation over, no condition of cessor and no discretion in the trustee as to the payment of the income to the *cestui que trust.*" 49 R. I. at 31.

It is to be conceded that the language used by this court in *Smyth* is ambiguous, particularly the phrase "* * * no discretion in the trustee as to the payment of the income to the *cestui que trust.*" From the context in which this language was used, it would appear that the court intended to say that the spendthrift clause in a trust is invalid if *inter alia* the trustee is without discretion to do other than to pay the income to the original *cestui que trust.* However, there appears to be a common thought running through these cases. In each instance the court contemplated that the preservation of the validity of the spendthrift clause could be accomplished if upon the breach of the conditions set forth in that clause there came into being a subsequent discretionary trust whose terms conferred upon the trustee a broad discretion concerning the makings of payments.

As we understand the court, the discretion must include the right to pay over the income, in part at least, to or for the use of some person or persons in addition to the original beneficiary. As one leading text writer has noted, in the case of a discretionary trust where the trustee's discretion is so limited that he must pay all or a particular part of the income to the beneficiary and may use his judgment about the time or manner of such payment only, the creditors of the beneficiary can compel the trustee to pay the beneficiary's share of the income to them. Bogert, *Trusts and Trustees* (2d ed.), §221, at 626.

It is our intention to take a more liberal stand on the subject of trusts which include spendthrift provisions. We seek to accomplish this not so much by attempting to find support in the language of *Smyth,* wherein it is questionable that the court, despite the language used, followed the

English rule as it had by then developed. Rather, we seek to state a rule in which we would embody what we conceive to be the philosophy of the modern English rule.

In *Duncan* v. *Elkins*, 94 N. H. 13, 45 A.2d 297, that court, referring to such provisions, said: "This last provision is for the modification of the trust into what is known as a 'protective trust,' the modification being executed upon the happening of an event named in the instrument of settlement from one where the beneficiary has a property right to receive income to one where the sums received depend upon the discretion of the trustee. This form of trust was apparently invented in England, where the right of a beneficiary is alienable in such situations * * *." *Id.* at 16, 45 A.2d 299. Accepting the New Hampshire court's statement as to the thrust of the English rule, we propose its adoption in this state. To do so will involve the extension of a rule which until now has held spendthrift provisions totally void unless the trust instrument provided, in the event of a breach of its conditions, for a cessation of the equitable estate, or a subsequent gift of its income to someone else. In extending that rule we now hold that the "subsequent gift" may take the form of a discretionary trust provided its terms are sufficiently elastic to permit the trustee at his discretion to pay the income, not only to the original beneficiary, but to others as well.

In our opinion, the 1929 trust was not converted into a discretionary trust by operation of the protective provisions thereof. It remains a spendthrift trust, and under our settled rule the spendthrift provisions thereof are void, and the income is subject to transfer by the beneficiary and is reachable by his creditors. An examination of the trust provisions discloses that the discretion conferred upon the trustee is insufficient to meet the essential requirement of a discretionary trust, that is, that, upon the happening of the condition prescribed therein, the trustee must be vested

with a discretion sufficiently wide to permit him to make payments to parties other than the beneficiary. Unlike the testamentary trust here involved, it fails to give the trustee discretion to pay the income, either in whole or in part, to or for the beneficiary or to or for the benefit of his family.

## II. The Testamentary Trust

It is to be noted at the outset that the validity of the testamentary trust has not been challenged. It is also to be noted that we are not concerned with the question of whether the government could collect unpaid taxes from the income of the trust fund. There appears, however, to be substantial authority supporting the proposition that the government can reach the income of the beneficiary of a trust fund to enforce its claims for unpaid taxes. 2 Scott, *Law of Trusts* (3d ed.), §157.4, at 1222; Bogert, *Trusts and Trustees* (2d ed.), §224, at 684. The issue with which we are here concerned, however, is whether the testator intended that the filing of a notice of levy to collect unpaid taxes would "trigger" the forfeiture provisions of the spendthrift trust so as to establish the discretionary trust contemplated by the testator where an attempt had been made to reach the income due the beneficiary.

This intention, in our opinion, must be found within the express provisions of the spendthrift trust. It is our obligation to ascertain, if possible, the dispositive intent expressed in the will when read in its entirety and in the light of the circumstances of its formulation. Where such intent is ascertainable, if not contrary to law, it will be given effect by us. *Manufacturers National Bank* v. *McCoy*, 100 R. I. 154, 212 A.2d 53; *Rhode Island Hospital Trust Co.* v. *Huntoon*, 94 R. I. 474, 181 A.2d 614; *Rhode Island Hospital Trust Co.* v. *Proprietors of Swan Point Cemetery*, 62 R. I. 83, 3 A.2d 236.

In other words, we are concerned with the question whether the testator, in the language set out in the pro-

tective clause of the spendthrift trust, made manifest his intention that the equitable life estate of the beneficiary in the income would be forfeited where some governmental agency or authority sought, through some form of legal process, to encumber the income with a lien for taxes due and unpaid. The plaintiff, pointing to the comprehensiveness of the protective clause, argues that it was the intention of the settlor that the beneficiary's life estate would be forfeited, not only upon an attempt by an ordinary commercial creditor to reach that income, but also when a taxing authority had attempted to reach the beneficiary's interest.

Some of the defendants argue likewise that the filing of the notice of levy by the Internal Revenue Service so encumbered the beneficiary's interest, in part at least, by means of an attachment thereof, to come within the provisions of the protective clause and that a forfeiture resulted. Among the defendants some have argued that the imposition of a tax lien was not such an occurrence as to cause a forfeiture of the life estate of the beneficiary in the income and that the language of the protective provisions of the testamentary trust disclosed no such intent.

The language of the protective clause specifically provides that if by reason of the attachment, sequestration, or taking upon execution or other legal process of the beneficial interest, or if by reason of any other process or means the beneficial interest could or would become "* * * vested in or payable to any person, firm or corporation other than such beneficiary * * *," then the equitable life estate of the beneficiary would terminate and the discretionary trust would be effectuated. It is to be conceded that this language is comprehensive, but, as we read it, it contemplates the inclusion, within its scope, of process arising out of the ordinary relationship of debtor and creditor. It seems to us rather obvious that the federal or a state government

is not to be included within the phrase "person, firm or corporation" as used by the testator in the will. It is our opinion that this language was intended by the testator to include in the broadest sense any kind of legal action intended to reach the property of the beneficiary in the fund by any person, firm, or corporation who is owed money by the beneficiary arising out of a commercial transaction of any kind.

We see nothing, however, in the language used by the testator that would warrant our extending the comprehensiveness of this language to debts that might be incurred by the beneficiary in activities other than those in which he voluntarily engages in commercial transactions. We cannot agree that the testator, on the basis of the language he employed in this will, intended to immunize the beneficiary against the responsibility for every debt that was incurred by him. Rather, the intent here expressed was to accomplish that for which all spendthrift trusts are established, that is, the protection of the income of the trust against the adverse effect of the beneficiary's profligacy, incompetence, or imprudence in the management of his estate. This was obviously to be accomplished by the forfeiture of his property right in the income and by leaving his future interest therein in the uncontrolled discretion of the trustee. In our opinion, if the forfeiture provisions of these trusts are to be extended to obligations and debts incurred outside of the normal course of commercial business, that intention must be made manifest by the testator in express terms, indicating the extent to which it is to go beyond the debts incurred in the normal course of business. No such express language appears in this trust.

We perceive nothing in the language employed from which it may be reasonably inferred that the intent of the testator was to relieve the beneficiary from the payment of obligations which arise out of his status as a member of

society, particularly such as the payment of taxes properly and legally assessed. We have carefully scrutinized the language used by the testator and find nothing therein that is persuasive of an intention that the limitation on the liability of the income to payment of debts was to extend beyond those debts arising out of normal and conventional commercial transactions. Particularly, we perceive nothing in that language from which it could be reasonably inferred that this limitation was to apply to debts incurred by reason of his civic liabilities as a member of the community.

## III. The Instructions

In the foregoing opinion we found that the 1929 trust was invalid as to its spendthrift provisions for the reason that, while it provided for a forfeiture of the equitable life estate in the beneficiaries, it did not vest a sufficient discretion in the trustee to make the subsequent trust a true discretionary trust and, therefore, did not divest Frances W. Budlong of her right to receive the income of the trust. We found also that the provisions of the testamentary trust for the forfeiture of the equitable life estate in the two beneficiaries did not become operative upon the filing of notices of tax levies by the Internal Revenue Service on July 14, 1952, and on October 24, 1958, and, therefore, that neither Jessie Margaret Wilson Budlong nor Frances W. Budlong was divested of her right to receive payment of the income of such testamentary trust.

We, therefore, in answer to question number 1 say that the First National Bank of Arizona, as trustee under the will of Jessie Margaret Wilson Budlong, is entitled as of right to all of the income of the testamentary trust referred to in clauses (a), (b), and (c) thereof, and in answer to question number 3 we say that Frances W. Budlong is entitled as of right to all of the income of the 1929 trust and of the testamentary trust referred to in clauses (a),

(b), and (c) thereof. Because we take this position, it will not be necessary for us to answer questions 2 and 4.

The parties may present to this court for approval a form of decree, in accordance with this opinion, for entry in the Superior Court.

## APPENDIX A

"Wherefore plaintiff prays that this Honorable Court will enter a judgment whereunder the Court will instruct plaintiff on the following questions:

"(1) Whether defendant First National Bank of Arizona, as testamentary trustee under the last will and testament of Jessie Margaret Wilson Budlong, is entitled as of right to any part, and if so what part, of:—(a) the income of the testamentary trust on hand on July 14, 1952; (b) the income arising between July 14, 1952 and November 23, 1962 from the principal of the testamentary trust; and (c) the income arising between said dates from the reinvestment of income not distributed to her.

"(2) If the answer to question (1) is in the negative, whether plaintiff now has discretion to pay any part, and if so what part, of such income to First National Bank of Arizona as testamentary trustee as aforesaid.

"(3) Whether defendant Frances W. Budlong is entitled as of right to any part, and if so what part, of:—(a) the income of the 1929 trust or the testamentary trust on hand on October 24, 1958; (b) the income arising between October 24, 1958 and December 31, 1963 from the principal of either such trust; and (c) the income arising between said dates from the reinvestment of income not distributed to her.

"(4) If the answer to question (3) is in the negative, whether plaintiff now has discretion to pay any part, and if so what part, of such income to defendant Frances W. Budlong."

*Letts & Quinn, Richard F. Canning, Jerome B. Spunt,* for plaintiff.

*Attorneys for Defendants:*

*Moore, Virgadamo, Boyle & Lynch, Salvatore L. Virgadamo, Charles H. Drummey,* for Frances W. Budlong and First National Bank of Arizona, as Testamentary Trustee u/w of Jessie Margaret Wilson Budlong, Deceased.

*Higgins & Slattery, James A. Higgins, John T. Walsh, Jr.,* for First National Bank of Arizona as Guardian of Estate of Milton Joseph Budlong, and *James A. Higgins,* Guardian Ad Litem, for Milton J. Budlong.

*Edwards & Angell, John V. Kean, Robert S. Burnett,* for John Budlong.