324 A.2d 654.

J. JOSEPH NUGENT, *Attorney General ex rel.* SAINT DUNSTAN'S DAY SCHOOL *vs.* SAINT DUNSTAN'S COLLEGE OF SACRED MUSIC.

AUGUST 19, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

ROBERTS, C. J. This is a complaint brought in the name of the Attorney General on the relation of Saint Dunstan's Day School (the Day School). The relators pray that certain funds held by the defendant, Saint Dunstan's College of Sacred Music (College of Sacred Music), be turned over to the Day School under the doctrine of *cy-pres*. The case was heard by a justice of the Superior Court, sitting without a jury, who entered a judgment dismissing the complaint. The Day School is now before this court prosecuting an appeal.

The College of Sacred Music is a charitable corporation, which was incorporated by the General Assembly in 1930. It appears that the original purpose of the College of Sacred Music was to improve the standard of music in the Episcopal Church and other denominations by training organists and choir masters. The College of Sacred Music, pursuant to its corporate charter, established Saint Dunstan's Choir School (the Choir School) to provide choirs for the training of choir masters.

Originally, the Choir School was located on Benefit Street in Providence. However, in 1952 a fund drive was undertaken to provide more adequate facilities, and, although the drive netted $102,000, the Choir School was financially unable to build a new school. Instead, the Board of Trustees decided to lease a building from Brown University, and the Choir School operated at this new location until 1962, when the University terminated the

lease. Due to economic problems existing at this time, the Board of Trustees voted to close the Choir School. However, a minority of the Board of Trustees who had voted against closing the Choir School, and other interested parties, decided to establish a new school named Saint Dunstan's Day School. The Day School, the relator here, is a charitable corporation which was incorporated by the General Assembly in 1962.

The $102,000, which constitutes the proceeds of the 1952 fund drive, was raised by soliciting subscriptions from individual subscribers. The subscription cards, which were given to each donor, were entitled: "St. Dunstan's Development Fund." Each subscription card provided: "In consideration of the gifts of others for the development of St. Dunstan's School, I hereby subscribe the sum of $........ * * *." The original subscription cards were never introduced into evidence, and the record indicates neither the identity of the subscribers nor their number.

In 1966 the Day School filed this complaint in the Superior Court, alleging that the $102,000 raised by the 1952 fund drive had been donated for the specific purpose of building a new Choir School and that the College of Sacred Music had no intention of ever using the money for that purpose. The complaint prayed that the court apply the doctrine of *cy-pres* and turn over the money to the Day School in order to carry out the intent of the subscribers. The trial justice dismissed the complaint, finding that the doctrine of *cy-pres* is applicable only to charitable trusts and that the Day School had failed to prove that the $102,000 was donated in trust to the College of Sacred Music, and concluded that the subscribers intended to make absolute gifts for general corporate purposes.

The Day School argues on appeal that the dismissal of the complaint is against the law and the evidence.

Specifically, it argues that the proceeds of the 1952 fund drive were donated for the specific purpose of building a new Choir School and constituted a Building Fund, so-called. Although the Day School argues primarily that proceeds of the 1952 fund drive constituted a charitable trust and not an absolute gift, it also argues that the doctrine of *cy-pres* is applicable to a fund raised by donations or subscriptions.

The question raised by this appeal is whether the proceeds of the 1952 fund drive constituted a trust or an absolute gift for general corporate purposes. The resolution of this issue depends upon the intention of the subscribers at the time they made their donations. In *Hobbs* v. *Bd. of Educ.*, 126 Neb. 416, 424-25, 253 N.W. 627, 631 (1934), the court held that the character of a charitable gift, whether a gift absolute, on condition, or in trust, depends on the intention of the donor as gathered from the words employed in the instrument construed in the light of the surrounding circumstances.

In accordance with this rule, the trial justice found that the donors intended to make absolute gifts to the College of Sacred Music for general corporate purposes. It is well settled that the findings of a trial justice, sitting without a jury, will not be disturbed by this court unless the trial justice overlooked or misconceived material evidence. *In re Adoption of Minor Child*, 109 R. I. 443, 451-52, 287 A.2d 115, 119 (1972); *Overton* v. *Washington Nat'l Ins. Co.*, 106 R. I. 387, 389 n. 1, 260 A.2d 444, 445 n. 1 (1970); *James Boyle & Son, Inc.* v. *Nanni Bldg. Co.*, 104 R. I. 568, 570, 247 A.2d 296, 297 (1968); *Town of South Kingstown* v. *Reels*, 102 R. I. 181, 183, 229 A.2d 293, 294 (1967). The Day School has failed to persuade this court that the trial justice overlooked or misconceived material evidence.

However, were we to assume without deciding that the Day School is correct in its contention that the proceeds

of the 1952 fund drive constituted a charitable trust, we would still be unable to agree that the facts of this case would warrant an application of the doctrine of *cy-pres*. A necessary prerequisite to an application of *cy-pres* is a determination that the dominant intent of the person or persons creating the charitable trust was general rather than specific in nature. *Industrial Nat'l Bank* v. *Guiteras*, 107 R. I. 379, 387, 267 A.2d 706, 711 (1970); *Industrial Nat'l Bank* v. *Glocester Manton Free Public Library*, 107 R. I. 161, 165-66, 265 A.2d 724, 727 (1970); *City of Providence* v. *Powers*, 83 R. I. 512, 516, 120 A.2d 811, 813 (1956); *Industrial Nat'l Bank* v. *Drysdale*, 83 R. I. 172, 174, 114 A.2d 191, 192, *reargument granted*, 83 R. I. 175, 119 A.2d 729 (1955); *Smith* v. *Ahern*, 52 R. I. 346, 349, 161 A. 117, 119 (1932); *Rhode Island Hosp. Trust Co.* v. *Williams*, 50 R. I. 385, 388, 148 A. 189, 190 (1929); *Gladding* v. *Saint Matthew's Church*, 25 R. I. 628, 638, 57 A. 860, 864 (1904); Annot., 74 A.L.R. 671 (1931).

There is no evidence in the record which would tend to support a finding that the dominant intent of the subscribers was general in nature. Indeed, the record does not even reveal the identity of these subscribers. Moreover, the Day School's argument that this fund was raised for the specific purpose of building a new Choir School indicates that the dominant intent of the subscribers was specific rather than general.

The trial justice stressed in his decision that "* * * it is vitally important to keep in mind the over-all background of the school and its activities." The College of Sacred Music had close ties with the Episcopal Diocese of Rhode Island. It was originally founded for the purpose of improving the quality of sacred music in the Episcopal Church. An Episcopal Bishop, James DeWolf Perry, was one of the four original incorporators. Over the years, the Choir School had provided choirs for several of the local

Episcopal churches. Both the College of Sacred Music and its adjunct, the Choir School, had from time to time received grants from the Episcopal Charity Fund. The trial justice found that the College of Sacred Music was, in a de facto sense, an unofficial adjunct of the Episcopal Church.

Although the trial justice found that this fund was not restricted for a specific use, it does not follow that the dominant intent of the subscribers was general. In light of the circumstances surrounding this fund drive, we can only conclude that the trial justice's finding that the subscribers intended to make their donations for the general corporate purposes of the College of Sacred Music indicates that the dominant intent of the subscribers was specific in nature and that the subscribers intended to benefit the College of Sacred Music and no other institution. We conclude, then, that the trial justice did not err in denying the prayer of an application of the *cy-pres* doctrine with respect to the fund in possession of the College of Sacred Music.

The appeal of the plaintiff is denied and dismissed, the judgment below is affirmed, and the case is remitted to the Superior Court.

*Joseph E. Marran, Jr.,* for plaintiff.

*Hinckley, Allen, Salisbury & Parsons, Stephen J. Carlotti, Michael P. DeFanti, Darrell S. Ross,* for defendant.