William Wood PRINCE and James P. Donovan, Trustees of the Frederick Henry Prince Trust Dated June 3, 1932

v.

Dennis J. ROBERTS II, Attorney General et al.

No. 79–257–Appeal.

Supreme Court of Rhode Island.

Oct. 28. 1981.

Levy, Goodman, Semonoff & Gorin, Richard J. Israel, Jeremiah J. Gorin, Robert A. Pitassi, Richard P. McMahon, William C. Dorgan, Edwards & Angell, Edward F. Hindle, Hinckley, Allen, Salisbury & Parsons, George M. Vetter, Jr., Winograd, Shine & Zacks, P. C., Richard W. Zacks, Higgins, Cavanagh & Cooney, John P. Cooney, Jr., Lee A. Worrell, Davis, Jenckes & Kilmarx, Ernest A. Jenckes, Bradford Gorham, Jerome B. Spunt, John G. Coffey, Rice, Dolan, Kiernan & Kershaw, John F. Dolan, Providence, Appleton, Rice & Perrin, James J. Higginson, New York City, for plaintiffs.

Dennis J. Roberts II, Atty. Gen., Maureen McKenna Goldberg, Sp. Asst. Atty. Gen., for defendants.

## OPINION

SHEA, Justice.

This is an appeal from a judgment of the Superior Court. This action was presented to a justice of the Superior Court sitting without a jury. It was brought pursuant to the provisions of the Uniform Declaratory Judgments Act, G.L. 1956 (1969 Reenactment) §§ 9–30–1 through 9–30–16. The issue involves the interpretation of a provision of a trust created on June 3, 1932, by Frederick Henry Prince, hereinafter referred to as the settlor. The action was brought by the trustees, and all parties in interest have been made parties to the action. Guardian ad litems were appointed for all interested minors and unascertained beneficiaries.

The provision of the trust in question, article II, section 1(j)(I), hereinafter referred to as (j)(I), creates a class of income beneficiaries for certain female issue of the settlor. This section provides that the amount of net income equal to the annual profits from the operations of F. H. Prince and Co., Inc., shall, after the end of each fiscal year, be paid out, partially, as follows:

"I. The trustees shall divide one-third thereof (up to but not exceeding Seventy-five Thousand Dollars ($75,000.) in any one year) into three equal shares, and shall pay over one each of said shares, per stirpes, to and among the female children and more remote female issue living at the time of such payment, of each of Frederick Henry Prince 3d, Bernard Henry-Wood 3d, and William Henry-Wood, PROVIDED, that any of said shares of net income which shall fail to be disposed of under this subdivision I shall be added to the other or others of said shares and follow the destination thereof." [1]

The claimants in this action are three female descendants of Frederick Henry Prince 3d (Prince III). Prince III, now deceased, had two children, Elizabeth J. M. P. deRamel (Elizabeth) and Frederick Henry Prince 4th (Prince IV). Elizabeth in turn has three children, Diana Oehrli (Diana), a minor; and twin sons, Regis and Guillaume deRamel. Prince IV has one daughter, Cynthia E. Prince (Cynthia), also a minor. Elizabeth, Diana, and Cynthia seek to have their rights under the trust agreement clarified. [2]

These claimants posed the three questions below to be answered by the court:

1. In what amount is Elizabeth J.M.P. deRamel, a daughter of Frederick H. Prince III entitled to share in the payments under article II, § 1(j)(I) for the calendar year ending December 31, 1978, and thereafter?

2. In what amount is Cynthia E. Prince, a daughter of Frederick H. Prince IV entitled to share in the payments under art. II, § 1(j)(I) for the calendar

1. This amount has subsequently been increased to $150,000 pursuant to a Family Settlement Agreement entered into on Sept. 9, 1975 and approved by the Superior Court on July 14, 1976 in Civil Action No. 75–2456.

2. Bernard Henry-Wood 3d died leaving no issue. William Henry-Wood (Wood Prince) has two living female descendants, Barbara Elea-nore Wood Prince and Wendy Catherine Wood Prince who are the children of Wood Prince's adopted son, Alain Wood Prince. Their rights to continuing income distribution under the (j)(I) clause are not at issue in this case because their rights to income were determined by this court in *Prince v. Nugent*, 93 R.I. 149, 172 A.2d 743 (1961).

year ending December 31, 1978, and thereafter?

3. In what amount is Diana Oehrli, a daughter of Elizabeth J.M.P. deRamel, entitled to share in the payments under art. II, § 1(j)(I) for the calendar year ending December 31, 1978, and thereafter?

Jurisdiction of the court to resolve any ambiguity is predicated on art. IV, sec. 1 of the trust which provides:

"This instrument shall be construed, and the powers and provisions hereinabove contained shall be administered, exercised and carried into effect according to the laws of the State of Rhode Island; and the rights and obligations under these presents of all persons interested or claiming hereunder or appointed hereby shall at all times be regulated by the law of said State notwithstanding that the parties and all or any such persons may now or at any future time be domiciled elsewhere than in the State of Rhode Island."

The findings of the trial justice are summarized in the following paragraphs. This court decided in *Prince v. Nugent*, 93 R.I. 149, 172 A.2d 743 (1961), that the daughter of a male child (Barbara Eleanore, daughter of Alain Wood Prince, see Note # 2) of one of the three individuals designated in the (j)(I) clause was entitled to share in the distribution of income as a "more remote female issue." Therefore, the justice concluded that the doctrine of collateral estoppel barred relitigation of that issue. Consequently, Cynthia, as the daughter of Prince IV, who is a son of Prince III, is a "more remote female issue" of Prince III and takes a share of the (j)(I) income, in a fashion similar to that of Barbara Eleanore and Wendy Catherine, daughters of Alain Wood Prince. Notwithstanding the trial justice's reference to the doctrine of collateral estoppel, she independently determined that the intent of the settlor in (j)(I) was to include females descended from male children of Prince III, thus including Cynthia.

Next the trial justice found the (j)(I) clause to be a class gift in which the intent of the settlor was to condition the annual entitlement to such female issue as were living at the close of the fiscal year. The trial justice then construed the language "per stirpes, to and among the female children and more remote female issue" found in (j)(I) to imply a per stipital distribution, meaning that a daughter of a female receiving (j)(I) income is not entitled to a share of income during her mother's lifetime.

Accordingly, to sum up the findings of the trial justice that respond to the three questions posed, one share of the (j)(I) income is to be paid to Elizabeth during her lifetime, and an equal share is to be paid to Cynthia during her lifetime. Since the amount annually available pursuant to (j)(I) has been increased to $150,000, and Bernard Henry-Wood 3d died leaving no issue, $75,000 is available annually to the female descendants of Prince III and also $75,000 is available to the female descendants of Wood Prince. Thus, according to the holding of the trial justice, Elizabeth and Cynthia will each get $37,500 annually, and Diana will get nothing during her mother's lifetime.

After review of the record and memoranda of law, we are of the opinion that the trial justice correctly applied the applicable law. We are not convinced by Elizabeth's argument that the justice erroneously construed the intent of the settlor in adopting (j)(I). For these reasons and those that follow, we affirm the judgment below, summarized in the preceding paragraph.

 Initially, we note that the primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to law. *Lux v. Lux*, 109 R.I. 592, 288 A.2d 701 (1972); *Industrial National Bank v. Budlong*, 106 R.I. 780, 264 A.2d 18 (1970); *Prince v. Nugent, supra*. When the language of a will or trust is ambiguous, the trial justice is confronted with a mixed question of law and fact. An appellate court will substitute its judgment for the determination of the trial justice or factfinder on such a mixed

question of law and fact only if reasonable minds would be impelled to a single conclusion. *DeNardo v. Fairmount Foundries Cranston, Inc.*, R.I., 399 A.2d 1229 (1979). In the case at bar, however, the determination of the intent of the testator required resolution of provisions of the trust which were not consonant with each other and which would lead reasonable minds to alternative conclusions. The intended effect of the term "per stirpes" on the distribution of the trust to the beneficiary class that consisted of "female children and more remote female issue" created not only a patent but a latent ambiguity that would require the introduction of extraneous evidence to resolve. *See Industrial National Bank v. Alexander von Humboldt Stiftung*, 105 R.I. 370, 252 A.2d 335 (1969); *First Baptist Church v. Soban*, 77 R.I. 115, 73 A.2d 772 (1950); *Deserving Poor Boys Priesthood Ass'n v. R.I. Hospital Trust Co.*, 53 R.I. 310, 166 A. 359 (1933). The resolution of these mixed questions of law and fact under such circumstances does not permit the substitution of a judgment of the appellate court for the findings of the trial justice. Under these circumstances the findings of the trial justice must stand if they are not found to be clearly erroneous.

When construing the trust instrument words should be given their primary, ordinary, and common meaning unless it plainly appeared that they were used in some other sense. *Industrial National Bank v. Rhode Island Hospital*, 99 R.I. 289, 207 A.2d 286 (1965); *Lees v. Howarth*, 85 R.I. 321, 131 A.2d 229 (1957). The language of the trust requires an annual share of (j)(I) income to be paid "per stirpes, to and among the female children and more remote female issue." The words "to and among the female children and more remote female issue" clearly imply to us an intention not to limit (j)(I) income to the female children of the named individuals during their lives before allowing the more remote female issue to receive income.

This position is advocated by Elizabeth, the only female child of the three named individuals in the (j)(I) clause. For Elizabeth's position to be correct, the language would have had to state, "to and among the female children and *then* to the more remote female issue." (Emphasis added.) As the language does read, we find no error in the trial justice's finding of a class gift in which the beneficiaries may be members of different generations. The clear, sensible meaning of the language "female children and more remote female issue" is that all female issue of the three named individuals may share alike. This result is tempered only by the words "per stirpes," which we shall discuss more fully below.

Another theory propounded by Elizabeth to preclude a share for Cynthia is that Cynthia is taking through a male issue of one of the three named individuals in (j)(I) and not through a female. Elizabeth argues that since Cynthia's father, Prince IV, is not entitled to share in the (j)(I) income, then Cynthia cannot take through him. Here again there was no error in the trial justice's finding that Cynthia was a "more remote female issue" of Prince III and therefore entitled to a share in her own right, not contingent on any entitlement of her father. Initially, we note that to hold otherwise would present enormous problems in view of the holding in *Prince v. Nugent, supra*, where this court allowed Barbara Eleanore Wood Prince, daughter of Alain Wood Prince, a male, to receive a share of (j)(I) income.[3] Furthermore, we fail to see how it can be said that the settlor's intent was to preclude females descended from males from taking by any implication in the language, especially in view of the fact that the three named individuals in (j)(I), from whom all female beneficiaries must descend, are males.

That brings us to the words "per stirpes" used at the beginning of the (j)(I) phrase. The remaining question involves what effect the settlor intended that term of law to

---

**3.** Alain Wood Prince's second daughter, Wendy Catherine, also began receiving a share of (j)(I) income after her birth in 1961.

have on the language following it. The trial justice properly defined the term "per stirpes" as this court had done in the case of *Petition of Gee*, 44 R.I. 132, 115 A. 716 (1922).

"'Per stirpes' is thus defined in Bouvier's Law Dictionary: 'By or according to stock or root; by right of representation. When descendants take by representation of their parent, they are said to take per stirpes; that is, children take among them the share which their parent would have taken, if living.'" *Id.* at 135, 115 A. at 717.

According to the trial justice, the use of "per stirpes" revealed the intent of the settlor that children of a living parent who is receiving (j)(I) income are not entitled to receive a share of income during the lifetime of their mother. Since Elizabeth is alive and receiving a share of (j)(I) income, the trial justice found that Elizabeth's daughter, Diana, could not take since she would be taking in competition with a living parent.

The effect of this construction is that the trial justice in essence found that the settlor intended all female issue of the three named individuals in (j)(I) to share in the income as long as situations did not occur in which both mothers and daughters received income. The trial justice concluded that "[t]his construction gives effect both to the Settlor's direction that the gift be *per stirpes* and to his intention that all female issue, whether or not descended from males, be included in the gift."

Again, we do not conclude that the trial justice's findings were erroneous. Although the term "per stirpes" is a legal term of art, the trial justice properly defined it, leaving only the question of how the settlor intended the term to affect the remaining language in the phrase, substantially a factual question.

Although we can perceive of many other possible alternative distributions for the (j)(I) income, we have no reason to substitute our judgment for that of the trial justice. This court has said many times that the inferential findings of the trial

justice are to be accepted as long as they "flow logically and reasonably from the established facts even though another set of equally reasonable inferences could be drawn from the evidence." *Chase v. Blackstone Distributing Co.*, 110 R.I. 537, 294 A.2d 392 (1972); *Hopkins v. Equitable Life Assurance Society*, 107 R.I. 679, 270 A.2d 915 (1970). The trial justice correctly identified that the purpose of the trust was to accomplish two objectives: (1) the perpetuation of the control and management of the corporate complex bearing the settlor's name in the Prince and the Wood Families and (2) the support and maintenance of these families through a distribution to them of the net income of the trust. The trial justice examined the trust instrument as a whole and in great detail. She ascertained the settlor's intent relying on these overall objectives and her analysis of the other income provisions in the trust which provided shares of income for male descendants of the settlor and certain named individuals. That analysis showed the benefits accruing to female issue to be limited compared to those available to males, basically because the males could work for the corporation. It is in this context that the trial justice found that the settlor intended to benefit all female issue except when both a mother and a daughter would simultaneously receive income. Thus there was no error in the findings of the trial justice.

Elizabeth, as a daughter of Prince III, is entitled to a share of (j)(I) income. Diana, Elizabeth's daughter, is not entitled to a share of (j)(I) income during the lifetime of her mother due to the "per stirpes" limitation. Cynthia, daughter of Prince IV, is entitled to a share of (j)(I) income as a "more remote female issue" of Prince III.

The appeal is denied and dismissed. The judgment below is affirmed, and the papers are remanded to the Superior Court.

MURRAY, J., did not participate.

KELLEHER, Justice, concurring.

I am of the belief that the arguments made in behalf of Elizabeth have great

merit; and if we were at a time when will-construction suits were certified to this court from the Superior Court after the taking of testimony had been concluded and the time had arrived for the entry of final judgment, I might well have taken the position that Elizabeth was entitled to enjoy during her lifetime whatever portion of (j)(I) income the trustees allocated to the female descendents of Prince III. The record clearly indicates that the (j)(I) proviso was a last-minute addition to the trust instrument, and the language used by the draftsman is patently ambiguous. However, we noted in *Redmond v. Rhode Island Hospital Trust National Bank*, R.I., 386 A.2d 1090, 1091 (1978), that the General Assembly at its January 1972 session repealed the will-certification provisions formerly found in G.L. 1956 (1969 Reenactment) § 9–24–28. *See* P.L. 1972, ch. 169, § 11. In *Redmond*, we pointed out that in light of this legislative action the proper vehicle for certifying will-construction litigation was a declaratory-judgment action.

Here, we are confronted with a declaratory-judgment action in which the trial justice has made findings of fact. Consequently, I believe that our consideration of the pending appeal is controlled by our oft-cited principle that holds both that it is the job of the trial justice to draw inferences from the evidence and that we shall not interfere with his or her inferences as long as they are reasonable. *See Industrial National Bank v. Isele*, 101 R.I. 734, 740 n.3, 227 A.2d 203, 207 n.3 (1967). The inferences drawn by the trial justice from the evidence are reasonable, and on this record I see no reason to disturb them.