Evan C. HUNT et al.

v.

CITIZENS TRUST COMPANY

v.

Robert K. HUNT.

No. 84–385–Appeal.

Supreme Court of Rhode Island.

Jan. 8, 1987.

Thomas G. Hetherington, Hetherington & Hetherington, Pawtucket, for plaintiff.

Edwin H. Hastings, Tillinghast Collins & Graham, Lawrence L. Goldberg, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal by the plaintiffs, Evan and Rodney Hunt, from a judgment of the Superior Court in favor of the defendant, Citizen's Trust Company. The action involves the interpretation of certain provisions of a trust of the late Gladys E. Hunt. The hearing was held before a trial justice sitting without a jury.

On June 28, 1973, Gladys E. Hunt (settlor) entered into a living-trust agreement with Citizens Trust Company as trustee. The agreement reserved the settlor's power to revoke during her lifetime. Paragraph 2(a) of the trust provides as follows:

"2. Upon the death of the Settlor

(a) The Trustee shall transfer and pay over to those of the grandchildren of Settlor's husband, Irving A. Hunt, who survive the Settlor, in equal shares per capita, all of the common or preferred stock of Esterline Corporation, which the trust may own at Settlor's death, or if the same or any part of it shall have been sold, then so much of the proceeds of sale or of the reinvestment of the proceeds of sale as can be traceable to and identifiable as such proceeds, shall be so paid to such grandchildren."

Paragraph 4 of the trust provides the trustee with the general power to:

"change and vary from time to time any investment or reinvestment of said trust property, real or personal, and for this purpose or for any other purpose of said

trusts sell from time to time, at either public or private sale or at broker's board, any of said investments or reinvestments thereof, real or personal."

The settlor amended the trust on July 26, 1976. Paragraph 3 of the amended trust provides as follows:

"3. I hereby add a new subparagraph 2(c) to read as follows:

(c) The trustee shall pay to the grandchildren of Settlor's late husband, Irving, who are living at the time of distribution, the residue of said trust estate, in equal shares, per capita.

If any distributions are to be made to grandchildren who are minors at such time, the executor may pay such amounts to the parents or surviving parents of such minor to hold the same in trust for such minor."

The settlor died on November 16, 1979, leaving seven living grandchildren of the late Irving A. Hunt. This action concerns the interests of two of those grandchildren who were minors at the commencement of this action.

At the time the settlor died, the trust owned 4,080 shares of common and 658 shares of preferred stock of the Esterline Corporation. Instead of distributing the stock to the beneficiaries, however, the trustee continued to administer the trust and to hold the trust assets pending resolution of the estate debts.

In March 1980, the trustee sent letters to plaintiffs' parents, Robert K. and Betty M. Hunt, advising them that partial distribution of the Esterline stock would probably be made after the estate tax returns were filed. After pointing out the risk involved in retaining the stock, the trustee suggested that the preferred stock be converted into common stock and that the trustee be given authorization to sell. Authorization forms with parental indemnity agreements were forwarded to Robert Hunt for execution.

Rodney and Evan, along with their father Robert, executed the authorizations on March 11, 1980. The minors included in their authorizations a provision written in by their father which provided: "This is to be a 'stop limit order' to sell my sons $2/7$ shares of Esterline Corp. common stock at no less than forty (40) dollars per share. Otherwise, distribute the $2/7$ shares of Esterline Corp. common stock to my children in kind as soon as possible. *Time is of the essence.*" (Emphasis in original.)

Pursuant to the executed authorizations the 658 shares of preferred stock were converted into 1,548 shares of common and were added to the 4,080 shares of common stock previously held. The plaintiffs' $2/7$ portion of the stock totaled 1,608 shares.

On March 20, 1980, 400 shares were sold at $40.25, and 500 shares were sold at $40. The trustee then spoke to Betty Hunt about the deteriorating price of Esterline common stock. Consequently, Mrs. Hunt set a new low limit for the sale of Esterline common of $34 per share. Accordingly, on March 27, 1980, the trustee sold 4,700 shares at $35.25 per share and 28 shares at $35.125 per share.

On April 29, 1980, counsel for "the family of Robert K. Hunt" wrote to the trustee demanding payment of the difference between $40 per share and the price at which the stock was sold on March 27, 1980. The letter also claimed that Betty Hunt had no authority to set a $34 limit on the sale of shares.

On October 17, 1980, the trustee issued two checks, each for $30,347.28, representing plaintiffs' interest in the sale proceeds of the Esterline stock. The checks were made payable to Robert and Betty Hunt as trustees for the minor plaintiffs. The Hunts acknowledged receipt of the checks and indicated that they would hold the proceeds in trust for their children.

After the trustee sold the stock, it split such that one share became 2.25 shares. Accordingly, in the Superior Court action, plaintiffs demanded that the trustee deliver to them 2.25 times 1,608 shares of stock, totaling 3,618 shares. In addition, plaintiffs sought to recover dividends in the

amount of $8,747.52. Alternatively, the plaintiffs demanded damages to compensate them for their loss.

The trustee filed a third-party complaint against Robert Hunt for indemnification. The defendant claimed that it was entitled to be reimbursed for any liability it sustained in the action pursuant to an indemnification agreement which was executed by Mr. Hunt in favor of defendant.

The trial justice, sitting without a jury, rendered a decision in favor of defendant. The court found that the trust instrument gave the trustee the power to sell the stock without obtaining the permission of the beneficiaries or their parents. Moreover, the court determined that even if arguendo the trustee was required to obtain permission from the beneficiaries before selling the stock, that such approval was given. The court found that the trust empowered Robert and Betty Hunt, in their capacity as trustees for plaintiffs, to authorize the sale of stock. The court further found that the Hunts approved the transactions. The plaintiffs appeal from this decision.

The plaintiffs argue that the trial justice erred in determining that the general-power-of-sale provision applied to the sale of the Esterline stock. In addition, they contend that their parents had no authority to direct the trustee to sell the stock. They conclude that the trustee had no authority to sell the stock.

 In a nonjury trial, the primary objective of the trial justice in construing a trust is to ascertain and effectuate the settlor's intent as long as it is not illegal. *Prince v. Roberts*, 436 A.2d 1078, 1080 (R.I.1981). Where the language of the trust is ambiguous, presenting mixed questions of law and fact, the appellate court will overturn a decision of the trial justice "only if reasonable minds would be impelled to a [contrary] conclusion." *Id.* at 1080–81.

The plaintiffs contend that the trustee had no power to sell the Esterline stock after the settlor died. Paragraph 4 of the trust instrument confers upon the trustees the general power of sale. The plaintiffs contend that paragraph 2(a) of the trust limits this general power with respect to the Esterline stock. They argue that paragraph 2(a), providing that the trustee shall transfer and pay over all of the Esterline stock available at the settlor's death, impliedly supersedes the general-power-of-sale clause. They conclude that in order to have sold the stock, the trustee would have had to petition the Superior Court for permission. We disagree.

 In construing a trust instrument, the words used therein are "given their primary, ordinary, and common meaning unless it plainly [appears] that they were used in some other sense." *Prince*, 436 A.2d at 1081.

 In ascertaining the meaning of the trust instrument in the instant case, the trial justice attributed the plain and ordinary meaning to the language used therein. He found that the trust provided the trustee with the general power to sell trust assets. He further found that this power was not limited by paragraph 2. He therefore concluded that the trustee had the power to sell the Esterline stock without obtaining the permission of the beneficiaries. We agree.

After considering the language of the trust instrument, we are of the opinion that the trial justice correctly determined that the trustee had the power to sell the Esterline stock. Because we resolve this issue in the first instance, we need not address the plaintiffs' other contentions.

For the reasons stated, the plaintiffs' appeal is denied and dismissed and the judgment of the Superior Court is affirmed.