DECISION
This matter is before the Court following a nonjury trial. The Petitioners, Robert G. Goelet, Philip Goelet and Edmond de La Haye Jousselin (Trustees), in their capacity as trustees of a trust created by Robert Walton Goelet (Settlor) in 1935 for the benefit of his son Francis Goelet, seek instruction as to the meaning of the trust and their duties thereunder. This Court has jurisdiction pursuant to G.L. 1956 § 9-30-1et seq.
 FACTS AND TRAVEL
Settlor was married to Anne Marie Guestier. This marriage lasted until Settlor's death on May 2, 1941. From this marriage Settlor had four children, Beatrice Manice Goelet, Robert Guestier Goelet, Francis Goelet, and John Goelet, all of whom survived Settlor. (See Stipulation No. 2 3.)
During his lifetime, Settlor created four separate sets of trusts for his children. The first three sets of inter vivos trusts were created in 1930 and 1931 (1930-31 Trusts), the second in 1932 (1932 Trusts), and the third in 1935 (1935 Trusts). The Settlor established the final trusts in his Last Will and Testament (Testamentary Trusts), which was signed and executed on June 27, 1939 with a codicil on June 28, 1939. (See
Stipulation No. 1.)
On August 26, 1930 Settlor executed three instruments, which created a trust for his then-living children, Beatrice, Robert and Francis. In 1931 Settlor executed a fourth trust for his newly born son, John Goelet. This trust was identical to the three previous instruments created for Settlor's other children. The 1930-31 Trusts provide that the net income of the trusts is to be accumulated until the child beneficiary obtains the age of 21, and then paid out to the designated child for the duration of his or her life. The trusts terminate on the death of the child with the principal to be distributed to that child's
 "surviving issue in equal shares per stirpes, or if [he or she] shall leave no issue, then to divide the same into so many equal shares that there shall be one for each of the Parties of the First Part who is then living and one for the issue then surviving of each child of the Parties of the First Part who is not then living . . . ." (Trusts for the Benefit of Beatrice Goelet, Robert Guestier Goelet, Francis Goelet, and John Goelet. Clause First(I) . 1930-31.)
On March 19, 1932 Settlor created his second set of trusts for each of his children. The 1932 Trusts direct that the net income be paid to the beneficiary child at the trustees' discretion, until the child reached the age of twenty-five. As amended on September 13, 1938, the trusts further permit principal distributions to the beneficiary children upon obtaining the age of twenty-five. The 1932 Trusts terminate upon the death of the beneficiary child. The principal of his or her trust is to be distributed to the beneficiary child's
 "surviving issue in equal shares per stirpes, or if [he or she] shall leave no issue, then to divide the same into so many equal shares that there shall be one for each child of the Settlor who is then living and one for the issue then surviving of each child of the Settlor who is not then living . . . ." (Trusts for the Benefit of Beatrice Goelet, Robert Guestier Goelet, Francis Goelet, and John Goelet. Clause First(I). 1932.)
On July 27, 1935 Settlor executed his final set of inter vivos trusts for the primary benefit of his children. Settlor also named as a beneficiary of each of the four 1935
Trusts, his wife, Anne Marie Goelet, providing her discretionary income for the remainder of her life, up to $50,000.00 per year. Furthermore, the 1935 Trusts indicate that discretionary income in excess of that paid to Settlor's wife may be paid to the beneficiary child, his or her lineal descendants, siblings, or to the issue of his or her siblings. The 1935 Trusts terminate simultaneously twenty-one years after the death of the last of the named beneficiaries of these trusts. (See Trusts for the Benefit of Beatrice Goelet and Anne Marie Goelet, Robert Guestier Goelet and Anne Marie Goelet, Francis Goelet and Anne Marie Goelet, and John Goelet and Anne Marie Goelet. Clause First. 1935.) At the time of termination the principal of the trust is to be distributed
 "to the lineal descendants of said [beneficiary child] then surviving in equal shares per stirpes, or if there be none such, then to the lineal descendants of the Settlor then surviving in equal shares per stirpes . . . ." (Trusts for the Benefit of Beatrice Goelet and Anne Marie Goelet, Robert Guestier Goelet and Anne Marie Goelet, Francis Goelet and Anne Marie Goelet, and John Goelet and Anne Marie Goelet. Clause First. 1935.)
Finally, in his Last Will and Testament, Settlor divided the residue of his estate into twenty equal shares. He distributed these shares in trust to his children as follows: six shares in trust for Robert; five shares in trust for Francis and John; and four shares in trust for Beatrice. Under the Testamentary Trusts, Trustees are allowed to pay discretionary income to the beneficiary child until the age of twenty-one, with any excess income being accumulated. When each child reaches the age of twenty-one, the income is to be paid to that child, with discretionary principal distributions being allowed to the beneficiary child after obtaining the age of twenty-five. The Testamentary Trusts terminate on the death of the named child. These trusts further require that the child's share be distributed as the child appoints by his or her will. If the child fails to devise his or her trust, it shall be paid over to surviving issue of the child in equal shares per stirpes. If the beneficiary child dies intestate, then the principal is to be distributed to the Settlor's remaining children in equal shares per stirpes. (See
Last Will and Testament of Robert Walton Goelet. Clause Seventh. Exhibit A.)
The trust presently before the Court is the 1935 Trust created for the benefit of Francis Goelet and his mother, Anne Marie. Anne Marie died on February 1, 1988. Francis died without issue on May 21, 1998. (See
Stipulation No. 5.) This trust will not terminate until twenty-one years after the deaths of Beatrice, Robert, and John. However, because Francis has died without any lineal descendants, a question has arisen as to the distribution of the principal of Francis' trust. This trust provides that if a child dies without issue, the principal shall be distributed "to the lineal descendants of the Settlor then surviving in equal shares perstirpes." (Trust for the Benefit of Francis Goelet and Anne Marie Goelet. Clause First. 1935.) Presently, three of the Settlor's four children are alive. The Settlor also has a total of nine living grandchildren; Beatrice has five children, Robert has two, and John has two. (See Exhibit B.)
The Trustees contend that the phrase distributing the corpus of Francis' 1935 Trust is capable of more than one interpretation. One interpretation would divide the principal into three shares to be distributed at the Settlor's children's generational level. The other would divide the principal into nine shares[1], which would be distributed at the Settlor's grandchildren's generational level.
On March 10, 1999, the Trustees filed a declaratory action pursuant to § 9-30-1 et seq., seeking construction of the 1935 Trust. The Court previously appointed four guardians ad litem to represent the interests of the minor, unborn, unascertained beneficiaries under the Trust. The Trustees also sought to join all the other interested parties in this action. All of the guardians ad litem and most of the interested parties have answered the Trustees petition. On February 14, 2002 this Court decided the issue of ripeness in relation to Defendant's motion to dismiss and motion for summary judgment. In its decision this Court held that this matter was ripe, and that a decision was necessary to provide the Trustees with guidance with respect to income distribution and to resolve any future controversies. This Court will not again address that issue. The Court then heard argument in this matter on September 4, 2002. No witnesses were presented, the parties stipulated to the evidence to be considered in this case. The parties have provided the Court with briefs and oral argument. The matter is now before this Court for decision.
 STANDARD OF REVIEW
In a nonjury trial, "the trial justice sits as a trier of fact as well as law." Hood v. Hawkins, 478 A.2d 181, 84 (R.I. 1984). "Consequently, [he or] she weighs and considers the evidence, passes upon the credibility of the witnesses, and draws proper inferences." Id. In this case that review is made on the basis of record evidence to which the parties have stipulated.
 CONSTRUCTION OF TRUST
The Rhode Island Supreme Court has held the "the primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or the settlor as long as that intent is not contrary to law." Prince v. Roberts, 436 A.2d 1078, 1080 (R.I. 1981) (Citations omitted). "`Where the language of a will expressly states the testator's intention, resort to the rules of testamentary construction is without warrant; it is when the language under consideration is susceptible of being read as disclosing alternate or contrary intentions that the rules of construction properly may be invoked.'" In reDiBiasio, 705 A.2d 972, 974 (R.I. 1998) (quoting Goldstein v. Oldstein,104 R.I. 284, 287, 243 A.2d 914, 916 (1968)). To determine the settlor's intention, the court should examine the circumstances existing at the time the trust was created. See In re Gee, 44 R.I. 132, 115 A. 716
(1922). "When the language of a will or trust is ambiguous, the trial justice is confronted with a mixed question of law and fact." Prince, 436 A.2d at 1080. "When construing the trust instrument words should be given there primary, ordinary and common meaning unless it plainly appeared that they were used in some other sense." Prince, 436 A.2d at 1081.
In the instant case the Trustees petitioned this Court to construe Francis Goelet's 1935 Trust. Settlor provided that if Francis died without issue, which he did, then the principal of the trust upon termination would be distributed to Settlor's lineal descendants "then surviving in equal shares per stirpes." (Trust for the Benefit of Francis Goelet and Anne Marie Goelet. Clause First. 1935.) The Trustees contend that there are two ways to interpret this language: 1) that Settlor intended this language to distribute the principal starting with the grandchildren's generational level; or 2) that Settlor intended that the grandchildren would take by right of representation from their parents.
It is clear from the face of the instrument that Settlor intended that distribution of the principal begin at the grandchildren's generational level. Settlor's language is very specific when given its plain and ordinary meaning. It is clear through the 1935 Trusts that Settlor intended that his grandchildren benefit from these trusts. Specifically the trusts do not terminate until the death of the Settlor's last child. Furthermore, if one of Settlor's children die without issue, then the principal was to go "to Settlor's lineal descendants then surviving in equal shares per stirpes." Looking at the legal meaning of each of the words in this phrase, it is clear that Settlor intended to distribute the principal equally among his grandchildren alive at the time of termination, with his grandchildren's issue taking by right of representation.
In Tetlow v. Taylor, 54 R.I. 363, 173 A. 88 (1934) the testator created a testamentary trust for the benefit of his two sons and his grandson. The trust provided that if the beneficiaries died leaving "no widows or issue or their descendants then surviving," Id at 364, then the trustees were to pay over the principal to four charities. Ruling on the testator's intent, the Rhode Island Supreme Court interpreted the use of the phrase "then surviving" as follows:
 "`Then' refers to the time of death of the three original beneficiaries. The words `then surviving indicate that the testator was looking forward to the time when his estate would go to charities in the event that his `blood' became extinct; and that it was his intention, if no person survived until he or she was entitled to receive a share of the principal, that the whole of the corpus go to the charities which he had selected rather than to individuals who were strangers to his blood." Tetlow, 54 R.I. at 366.
Thus it is clear that the Supreme Court views the phrase "then surviving" as defining the vesting date for the principal of a trust. Therefore the beneficiaries of the principal are not determined until the occurrence of the stated future event.
In the instant case, the stated event is the death of Settlor's last child. It is clear from the face of the instrument that Settlor intended, that twenty-one years after the death of his last child, that the distribution of the 1935 Trust funds to begin at the level of his grandchildren. The principal was to go to either the beneficiary child's lineal descendants "then surviving" or "to the Settlor's lineal descendants then surviving," depending on whether the beneficiary child died with issue. Either way, these shares do not vest until the death of the last beneficiary child. Thus these shares will never vest in one of Settlor's children, but rather his grandchildren. Therefore, upon the termination of Francis' 1935 Trust the principal is to be distributed to the lineal descendants of the Settlor who are then alive.
The 1935 Trust further indicates that the lineal descendants then surviving were to take the principal in "equal shares per stirpes." This language clearly indicates Settlor's intent to distribute the principal of Francis' 1935 Trust "in equal shares" to Settlor's grandchildren, then to the issue of the deceased grandchildren "per stirpes."
The Rhode Island Supreme Court, relying on Bouvier's Law Dictionary, defined "per stirpes" as
 "By or according to stock or root; by right of representation. When descendants take by representation of their parent, they are said to take per stirpes; that is, children take among them the share which their parent would have taken, if living." Petition of Gee, 44 R.I. 132, 135, 115 A. 716, 717 (1922).
In this case, it is apparent that Settlor intended that his grandchildren receive the principal of this Trust in equal shares. Had Settlor intended for the distribution of the principal to his grandchildren to be by right of representation, he would have simply stated "to the lineal descendants of the Settlor per stirpes." According to the Rhode Island Supreme Court's definition of per stirpes, which was adopted before the creation of the 1935 Trusts, a distribution to his lineal descendants per stirpes would have meant that Settlor's lineal descendants, or in this case grandchildren, would have taken by right of representation from their parents. However, Settlor did not use this language. Instead he stated that his lineal descendants were to take the principal "in equal shares per stirpes." This clearly indicates that it was Settlor's intent that his grandchildren take in equal shares and that their heirs take the remainder by right of representation.
This Court finds that it was Settlor's intent, through the 1935 Trusts, to provide for his grandchildren. The trusts were designed in a manner to provide income to Settlor's wife and children through their lives and then to benefit his grandchildren. This is evident from the fact that the trusts do not terminate until twenty-one years after the death of his last child. It was Settlor's intent that each grandchild take from his or her parent's 1935 Trust. However, with astute foresight Settlor anticipated that one of his children might die without issue. In this case the principal of the trust would go "to Settlor's lineal descendants in equal share per stirpes."
This Court holds, based on the plain meaning of Settlor's language, that distribution is to be made in equal shares at the first generational level where Settlor has descendants alive, presumably at the level of his grandchildren. From there distribution is to be made per stirpes. In other words, if anyone at the generational level at which distribution occurs predeceases the termination of the trust, then his or her heirs are to take per stirpes.
 EXTRINSIC EVIDENCE
Although this Court is not required to rely on extrinsic evidence, due to the fact that Settlor's intent is clear on the face of the instrument, a review of such evidence further demonstrates Settlor's intent that his grandchildren take in equal shares with their heirs taking by right of representation. As stated previously, `"when the language under consideration is susceptible of being read as disclosing alternate or contrary intentions that the rules of construction properly may be invoked.'" In re DiBiasio, 705 A.2d at 974. Where such an ambiguity exists, a court is justified to review extrinsic evidence to determine the settlor's intent. See Prince, 436 A.2d at 1081. In the instant case extrinsic evidence still supports the Court's conclusion that the phrase "to Settlor's lineal descendants in equal shares per stirpes" means that distribution begins at the grandchildren's generational level or the with issue then surviving.
A review of extrinsic evidence requires an examination of Settlor's estate plan as a whole. In total, Settlor created four separate sets of trusts. All four of these trusts share similarities. All were created for the primary benefit of one of Settlor's four children. Furthermore, all four trusts provide for the distribution of the residue, upon termination, to the issue of the beneficiary child if that child dies with issue. Only the 1935 Trusts have language that distinguishes it from the other three sets.
Each of the 1930-31, 1932 and Testamentary Trusts share similarities that are not in the 1935 Trusts. These trusts all provide that the income of the trusts and potentially the principal of the trusts are to be distributed exclusively for the benefit of the child for whom the trust was created. Furthermore these three sets of trusts terminate upon the death of the beneficiary child. If the beneficiary child were to die without issue, each of these trusts provide that the remainder is to be distributed in equal shares to Settlor's children alive at the time of termination and for a separate share for the issue of any deceased child who died without issue.
When Settlor created the 1935 Trusts, he specifically included provisions different from the other trusts. These differences are evidence that it was Settlor's intent to accomplish a slightly different result in his estate plan from the plan of the other three trusts. Specifically, the 1935 Trusts provides that the income of the trusts not only benefit the beneficiary child but also the Settlor's wife. These trusts also provide for income to be distributed to either the beneficiary child or his or her lineal descendants, or to the Settlor's other children or their issue. Furthermore, the 1935 Trusts do not terminate upon the death of the beneficiary child, instead these trusts terminate twenty-one years after the death of the last surviving child of Settlor. Finally, these trusts provide for a different distribution if the beneficiary child dies without issue. In such a case, which has occurred, the remainder of the trust is to be distributed "to the lineal descendants of the Settlor then surviving in equal shares per stirpes."
Based on these differences it could be inferred that it was Settlor's intent that the 1935 Trusts provide for different support than the other three sets of trusts. It is clear that the other trusts were created specifically for the benefit of the beneficiary child and his or her issue. However, the 1935 Trusts were created to provide for all of the Settlor's heirs.
Initially these trusts were created to benefit the specific child and Settlor's wife. The 1935 Trusts are then designed to continue in such a manner that it benefit the Settlor's grandchildren, which is clear from the fact that the trusts do not terminate until twenty-one years after the death of Settlor's last child. Furthermore, because Settlor altered the language which deals with the situation where one of his children dies without issue, it is clear that he intended a different outcome. The differences in language between the 1935 Trusts and the other three sets of trusts and the apparent differences in intent demonstrate that the Settlor had a different plan for the distribution of the 1935 Trusts. This extrinsic evidence shows that it was Settlor's intent, in the event that one of his children die without issue, that the principal of that 1935 Trust be distributed in equal shares at the grandchildren's generational level, and if necessary to the descendants of this level by right of representation.
 CONCLUSION
After evaluating the evidence, arguments, and briefs, this Court interprets the language "to the lineal descendants of the Settlor then surviving in equal shares per stirpes" to mean that Settlor intended to distribute the residue of Francis Goelet's 1935 Trust to Settlor's surviving grandchildren in equal shares. Furthermore, if applicable, surviving issue of predeceased grandchildren would take per stirpes, or in other words by right of representation.
Counsel shall prepare the appropriate judgment for entry by the Court after notice.
[1] This result might vary depending upon how many grandchildren, or lineal descendants as the case may be, are alive when the 1935 Trusts terminate. As it stands now, there are nine grandchildren.