DECISION
Before this Court is a Super. R. Civ. P. Rule 12(b)(6) motion to dismiss filed by three beneficiary Defendants, in opposition to a counterclaim filed by other Defendants, against the Plaintiff Trustees (Trustees) of an irrevocable trust. The nonmoving Defendants filed a timely objection thereto. Jurisdiction is pursuant to G.L. 1956 § 8-2-13.
 FACTS AND TRAVEL[1]
On June 3, 1932, Fredrick Henry Prince created by Deed of Trust, the 1932 Fredrick Henry Prince Trust (Trust),[2] the term of which was to continue until twenty-one years after the death of the last named beneficiary. The last of the named beneficiaries died on January 22, 1998. Accordingly, the Trust will terminate by its terms on January 22,'.
A principle asset of the Trust is the stock of a corporate entity, F.H. Prince Co., Inc. (F.H. Prince Co.), which, since the inception of the Trust, has been wholly owned by it. During the Settlor's lifetime, one of F.H. Prince Co.'s main assets was the Chicago Stock Yards. Today, its primary asset is all of the stock of CMD Corp., which, through a myriad of subsidiaries, manages real estate and investment portfolios having an approximate value, according to statements filed by the trustees in connection with their 1998 accounting, of more than one billion dollars.
On November 12, 1999, the Trustees filed a complaint, presenting an accounting of the 1932 Trust for the period of January 1, 1994 to December 31, 1998. Since that initial complaint and over the past six years, the parties have filed numerous answers, amendments, appearances, and withdrawals, but there has yet to be a hearing on merits of the original complaint.[3]
More recently, and of particular significance for the motion to dismiss now before this Court, on August 12, 2005, three of the Defendants — Alain Wood-Prince, Edward Alexander Wood-Prince, and Edward Alain Wood-Prince (Counterclaimants) — filed a motion seeking the Court's permission for leave to file a counterclaim. On August 18, 2005, Cynthia Elizabeth Prince (Daisy Prince) — who is not only a beneficiary and a Defendant in this case, but is also an employee of F.H. Prince Co. — filed a motion to join the motion for leave to file a counterclaim. In her motion, she alleges, inter alia, that because Article II, Section 3[4] of the Trust limits distribution exclusively to male beneficiaries, the Trust violates various federal and state antidiscrimination laws, as well as the equal protection clauses of the United States Constitution and the Constitution of the State of Rhode Island.[5] The Court, without passing on the merits of the counterclaims, granted both of these motions.
On September 29, 2005, the Counterclaimants filed their counterclaim, asking this Court to declare that the purpose of the Trust has been frustrated, that it should therefore be terminated, that the rights of the male and female beneficiaries to share in the discretionary portion[6] of the Trust be determined, and that the Court appoint a Special Master to facilitate the settlement issues relating to the final Trust distribution. Subsequently, two of the other Defendants (Non-Consenting Beneficiaries) — Guillaume de Ramel and Regis de Ramel — filed an objection to the counterclaim and filed the motion to dismiss the counterclaim, pursuant to Rule 12(b)(6). It is that motion that now is before this Court for decision.
 STANDARD OF REVIEW
A motion to dismiss under Rule 12(b)(6) will only be granted "`when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim.'" Hendrick v. Hendrick, 755 A.2d 784, 793 (R.I. 2000) (citation omitted). In determining whether to grant a motion to dismiss pursuant to Rule 12(b)(6), this Court "views the facts in the light most favorable to the nonmoving party." Guiliano v.Pastina, Jr., 793 A.2d 1035, 1036 (R.I. 2002) (quoting Martinv. Howard, 784 A.2d 291, 297-298 (R.I. 2001)).
 MOTION TO DISMISS COUNTERCLAIM
The Non-Consenting Beneficiaries argue that the Court cannot terminate a trust if some of the beneficiaries do not consent to the termination. See, e.g., Angell v. Angell, 28 R.I. 592,601, 68 A. 583, 587 (1908); Restatement (Second) of Trusts § 337; Bogert Bogert, Trusts and Trustees, §§ 1002, 1007 at 341-48, 394-410 (2nd ed. 1983); Scott, The Laws of Trusts § 340 at 495 (4th ed.). Accordingly, they urge that because they are Trust beneficiaries who do not consent to the early termination of the Trust, no set of facts could possibly exist to support the Counterclaimants claim to terminate the Trust.
The Counterclaimants urge that the purpose of the Trust has become frustrated, or, alternatively, that the achievement of the purpose of the Trust is impossible. They assert that due to circumstances unanticipated by the Settlor; namely, the shutting down of the Chicago Stock Yards, that termination of the Trust would best serve the purposes the Settlor originally intended.See, e.g., Restatement (Third) of Trusts §§ 65 and 66 (hereinafter "Restatement"). The Counterclaimants contend that the Trust's purpose is to provide employment for male members of the family and to preserve the nature of the original F.H. Prince Co., Inc., which, in addition to other enterprises, owned the Chicago Stock Yards. To support this conclusion, the Counterclaimants cite particular sections — Article II, Section 1(j),[7] Article II, Section 3,[8] and Article II, Section 1[9] — of the Trust. In essence, this underlying claim revolves around the interpretation of Trust language, the Settlor's original intent, and the intent of the Settlor, had he been able to anticipate the closing of the Chicago Stock Yards.
Section 66 of the Restatement notes that a court may modify an administrative or distributive provision of a trust, if "because of circumstances not anticipated by the settlor the modification or deviation will further the purposes of the trust." Comment (a) of § 66 of the Restatement highlights the fact that beneficiary consent is not necessary for this modification and comment (b) states that "the court may so modify the terms of the trust as to require prompt termination." Accordingly, it is within this Court's power to modify the terms of the Trust so as to require prompt termination, without the united consent of all beneficiaries.
As noted, under a Rule 12(b)(6) motion, the moving party bears the burden of showing that it is beyond a reasonable doubt that there are no set of facts, viewed favorably toward the nonmoving party, which could be proven in support of the nonmoving party's claim. See Hendrick, 755 A.2d at 793. In short, the Non-Consenting Beneficiaries have not met their burden. The Counterclaimants have alleged facts that, if shown to be true, would support their claim for early termination of the Trust due to unanticipated circumstances.
Viewed in a light favorable to the Counterclaimants, the language of the Trust evidences that the Settlor's purpose in creating the Trust could be to provide employment for the male beneficiaries. The Settlor repeatedly noted his desire to have the male issue of his heirs work for the company that bore his name. The nature of the activities conducted by F.H. Prince Co. has changed significantly: today it is primarily a real estate investment firm. Changes in technology and market forces have led to the end of the Chicago Stock Yards. Accordingly, it has not been shown beyond a reasonable doubt that the Counterclaimants could not prove that the purpose of the Trust was the employment of the Settlor's male issue, or that the closing of the Chicago Stock Yards amounted to unanticipated circumstances that have frustrated the purposes of the Trust.
 CONCLUSION
For the foregoing reasons, the motion to dismiss pursuant to Rule 12(b)(6) is denied. Counsel shall present an appropriate order consistent with this Decision.
[1] The full facts of this case are too extensive to recount here. For a more detailed recitation of the facts, see this Court's February 8, 2005 decision at Prince v. Lynch, 2005 R.I. Super. LEXIS 24. It should be noted, however, that this prior decision by the Court concerns a different but related matter. In that case, the Trustees sought court authority to reorganize a business enterprise owned in part by the Trust.
[2] On a number of occasions our Supreme Court has been asked to interpret one or more provisions of the Trust. See, e.g.,Prince v. Roberts, 436 A.2d 1078 (R.I. 1981); Prince v.Nugent, 93 R.I. 149, 172 A.2d 743 (R.I. 1961).
[3] This time lapse is in part due to the objections of some of the beneficiaries to the Trustee's accounting.
[4] The discretionary portion is outlined in Article II, Section 3 of the Trust. Upon termination of the Trust, the Trustees may pay, transfer, or convey fifty percent of the Trust capital to the Settlor's and his cousin's (Bernard Henry-Wood, Jr.) children and/or remote male issue that are "then serving F.H. Prince Co." If none of these children or remote male issue are employed by F.H. Prince Co., then fifty percent of the Trust capital shall instead be paid to the children and/or the remote male issue of Lewis Cass Ledyard, 3d, and Louis Livingston Lorillard who are serving F.H. Prince Co. The remaining capital is to be distributed by the Trustees, with seventy-five percent going to various other individuals entitled elsewhere within the Trust, and twenty-five percent to be distributed to charitable organizations.
[5] It should be noted that these issues are not substantively addressed in this decision. The only issue presently before this Court is whether any set of facts could be proven to support the Counterclaimants' claim seeking the early termination of the Trust.
[6] See supra text accompanying note 4.
[7] Article II, Section 1(j) states that the male children and remote male issue of some of settlor's relatives should share in a percentage of the company's profits, if they "shall then be serving the corporation."
[8] See supra text accompanying note 4.
[9] Article III, Section 1 states in part: "It is also my hope that during the continuance of this trust . . . [that certain male relatives] will, if and so long as they are proficient and diligent, be from time to time employed by the corporation at salaries commensurate with their respective abilities and experience." This section also expresses the Settlor's "hope" that other male relatives become "actively identified" with "the corporation that bears [the Settlor's] name."