DECISION
This matter comes before the Court by Joint Petition For Instructions and Orders In Aid of Construction of Trust filed by co-trustee Bank of America, N.A. ("Bank"), co-trustee Robert B. Gates, Esq., and beneficiary South County Hospital Healthcare System ("Hospital") relating to the Emilie Luiza Borda Trust.
 I Facts and Travel
The charitable trust at issue was established in 1967 pursuant to a trust agreement executed by Emilie Bell Obnovlenski-Thompson and Emilie Luiza Borda in memory of the latter's brothers. One of the stated purposes of the trust was to finance an "Extended Care Wing" at the Hospital. Though this purpose was accomplished some time ago, the Hospital no longer operates the wing for extended care purposes and now seeks to invade the trust res to fund the purchase of medical equipment.[1] Though co-trustee Gates approves, co-trustee Bank resists.
Paragraph 1 of the trust instrument states, in part:
 This trust shall be irrevocable and is being created for the purpose of enabling the SOUTH COUNTY HOSPITAL, a Rhode Island corporation located in said South Kingstown, to construct immediately an Extended Care Wing which shall include not less than thirty beds, and for the further benefit of said Hospital as set forth herein, this gift being made . . .? *Page 2 
After directing the net income of the trust to be used in furtherance of the extended care wing, Paragraph 2 of the trust instrument states, in part:
 Any net income not needed by the Hospital for the foregoing purpose and principal, if desirable, may be expended in the discretion of the Board of Trustees of the Hospital for medical equipment and for medical research.
The three joint petitioners seek instructions as to (1) who has the discretion to determine whether principal may be used, and (2) whether trust principal and income must only be used in connection with the extended care wing contemplated by the trust instrument.
The parties have submitted an Agreed Statement of Facts, and there appear to be no material issues of fact in dispute. One trust co-settlor is deceased, the other incapacitated.
 II Who Has Discretion to Determine Whether Principal May BeUsed?
The first question posed by petitioners is who has the discretion to determine whether principal may be used. Taking the relevant parts of Paragraphs 1 and 2 of the trust instrument together, quoted supra, it is clear that the trust contemplates the possibility that some net income and principal might not be needed for the extended care wing and could ultimately be used to fund medical equipment and medical research. Paragraph 1 states that the trust was created "to construct immediately an Extended Care Wing . . . and for the further benefit of said Hospitalas set forth herein." (emphasis added). This "further benefit" is detailed in Paragraph 2: "Any net income not needed by the Hospital for the foregoing purpose and principal, if desirable, may be expended inthe discretion of the Board of Trustees of the Hospital for medical equipment and for medical research." (emphasis added). Indeed, the plain language of Paragraph 2 suggests that *Page 3 
while the net income of the trust may be used for medical equipment/research only if "not needed" for the extended care wing, no such limitation exists for the principal. In any event, however, the discretion rests as is plainly stated with the Board of Trustees of the Hospital. "The primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or settler as long as that intent is not contrary to law." Prince v.Roberts, 436 A.2d 1078, 1080 (R.I. 1981).
The Bank's and the Hospital's memoranda contain much discussion about the phrase "if desirable." The words "if desirable," if having any effect at all (the Hospital suggests the phrase might be merely precatory), reinforce the discretion granted to the Board of Trustees of the Hospital which is the only entity named in that sentence.[2] "When construing the trust instrument, words shall be given their primary, ordinary, and common meaning unless it plainly appeared that they were used in some other sense." Id. at 1081. It cannot be said to "plainly appear" that the "if desirable" phrase applies to anyone other than the Hospital. This result is also in accord with earlier language in Paragraph 2 where the Hospital is granted discretion, unchallenged here, to use net income to defray loan interest "if desirable".[3]
 III Can Trust Income and Principal Be Used for Medical Equipment/Research?
Aside from the question of who has the discretion to invade the Trust res, the petitioners also seek clarification as to whether any Trust funds — income or principal — *Page 4 
may be used for medical equipment/research pursuant to the trust instrument itself or through the application of the cy pres doctrine.
As discussed above, the plain language of the Trust instrument expressly contemplates funding for medical equipment/research. Paragraph 1 alludes to funding of objectives other than the extended care wing with the language "and for the further benefit of said Hospital as set forth herein." Moreover, Paragraph 2 contains direct language stating that net income not needed for the extended care wing as well as principal "may be expended in the discretion of the Board of Trustees of the Hospital for medical equipment and for medical research." Assuming that the Hospital could not simultaneously require net income for an extended care wing and nonetheless deplete the principal by funding medical equipment/research (a perhaps academic question not completely settled by the plain language), so long as the net income is "not needed" for the extended care wing, funding medical equipment/research would be permissible as the settlors' intent is sufficiently manifest within the trust instrument. See id.
Because the trust instrument provides direct guidance as to the secondary deployment of trust assets, the doctrine of cy pres should not be invoked. Section 18-4-1 allows for cy pres application only "where the purposes of the donor cannot be literally carried into effect. R.I. GEN. LAWS (1956). As discussed above, Paragraphs 1 and 2 explain the trust purposes to be funding of an extended care wing and then medical equipment and research. Since the procurement of medical equipment and the underwriting of research can quite literally be carried into effect by the Hospital, the statute forecloses the application of the cy pres doctrine. See id. *Page 5 
Even if this Court were to attempt a cy pres modification of the trust, its primary purpose of supporting an extended care wing being originally accomplished yet now frustrated, the statute would require the Court to then "carry out the intents of the donor as near as may be." Id. But again, these intents have already been indicated by the settlors in Paragraph 2: to fund medical equipment and research with net income and even with principal if the Hospital so desires. Accordingly, the Court would be bound to further these interests.[4] Moreover, "[a] necessary prerequisite to an application of cy-pres is a determination that the dominant intent of the person or persons creating the charitable trust was general rather than specific in nature."Nugent ex rel. Saint Dunstan's Day Sch. v. Saint Dunstan's Coll. ofSacred Music, 324 A.2d 654, 670 (R.I. 1974) (citing Industrial Nat'lBank v. Guiteras, 267 A.2d 706, 711 (R.I. 1970); Industrial Nat'l Bankv. Gloster Manton Free Public Library, 265 A.2d 724, 727 (R.I. 1970);City of Providence v. Powers, 130 A.2d 811, 813 (R.I. 1956)). While the line of demarcation between specific and general intent is sometimes blurry, the trust here specifies particular purposes of an extended care wing, medical equipment, and medical research for a specific hospital — far narrower than just a general charitable intent.[5] Without a broad general intent, cy pres has no office.[6] *Page 6 
 IV Conclusion
Because the plain language of the trust instrument contemplates a purpose secondary to the extended care wing and specifically provides that principal may be expended at the discretion of the Hospital, the Board of Trustees of the Hospital is afforded such discretion to determine whether and when to deplete the trust res. Similarly, the instrument is clear that, if not needed for an extended care wing, trust assets may be expended to provision medical equipment or fund medical research.
Counsel for the Hospital may present an appropriate order consistent herewith which shall be settled after due notice to counsel of record.
[1] The Hospital asserts that economic forces in the modern healthcare industry compelled its decision to cease providing extended care. Its justification does not appear to be challenged.
[2] While words of desire are often susceptible to interpretation as being simply hortatory, here the phrase "if desirable" does not purport to refer to the desire of the settlors. Rather, the controversy here is whether the phrase refers to the beneficiary or to the trustees; traditional inquiry into precatory wishes is thus inapplicable.
[3] Paragraph 2 refers at first to the "the Board of Directors" and then later to "the Board of Trustees of the Hospital." This inconsistency appears to be a drafting error but it remains clear that both instances refer to the governing body of the Hospital.
[4] Id.; see also Scott on Trusts, § 399.2 at 492-4 ("If the testator makes an express provision as to the disposition of the property in case the particular purpose fails, that provision is controlling. Thus, if he provides that if the particular purpose should fail, the property should be devoted to certain other charitable purposes, it will be so applied.")
[5] See In re Estate of Conica, No. 92-6194, 1995 R.I. Super. LEXIS 166, at *4 (R.I.Super.Ct. Nov. 27, 1995) ("It is seldom, however, that the testatrix' intention can be definitely analyzed and divided into a specific or general intention." (citing Scott on Trusts, § 399.2 at 490)).
[6] Having determined that the Borda trust was created with specific intent which thereby prevents cy pres application, a complete failure of the trust would require a reversion back to the settlors' estates — a result that no party here seeks. See Industrial Nat'l Bank v.Drysdale, 125 A.2d 87 (R.I. 1956). *Page 1