DECISION
Before this Court for decision are cross motions for summary judgment filed by plaintiffs David L. Steinhof, Michael E. Steinhof, Gregory E. Steinhof, Edward J. Steinhof, and Jody Lousie Fedele (collectively "Plaintiffs") and defendants Michelle J. Murphy, Elizabeth Ferland, Charles Ferland, and Oscar M. Ferland (collectively "Defendants"). The Court has reviewed the applicable law, together with the parties' legal memoranda and oral arguments, and now issues this written decision.
 Facts and Travel
This matter concerns the interpretation of certain provisions of an inter vivos trust and two wills of the late Robert Steinhof ("Decedent"), who passed away on August 27, 2004. The decedent established the trust at issue on December 28, 1994. In relevant part, the trust states: *Page 2 
 "ARTICLE III
 RIGHTS AND POWERS RESERVED
 I hereby reserve the following rights and powers, to be exercised by me at any time, and from time to time, by delivery to Trustee of a written, signed, and acknowledged statement subscribed to by two witnesses, setting forth my intention:
 * * *
 (3) To alter, modify, or amend this Declaration of Trust in any particular or general respect, provided that the duties and responsibilities of a Trustee other than myself shall not be permitted to be changed without the Trustee's approval.
 ARTICLE IV
 POST-DEATH MANAGEMENT
 Section C. Taxes, Tax Allocation. Trustee shall pay to the Personal Representative of my estate, as a cost or expense of administration of my estate, such amounts as are certified in writing by my Personal Representative as due for estate, death, inheritance, transfer, income, and excise taxes (specifically excluding generation-skipping taxes), including interest and penalties thereon, if any, which are payable to any state taxing authority or the United States, and which exceed the liquid assets of my estate subject to administration by my Personal Representative . . . Any property of the Trust Estate existing on the death of my spouse and which was or is at that time, or earlier, qualified for exemption from generation-skipping tax shall not bear any estate tax until non-exempt property has been used to satisfy estate taxes associated with my death or the death of my wife.
 * * *
 ARTICLE VII
 FINAL DISTRIBUTION
 . . . the entire Trust Estate upon my death if my wife does not survive me, shall be held in Trust and administered as follows:
 Section A. Generation-Skipping Trusts.
 (1) Establishment. The portion, or portions, if any, of the Trust Estate to which generation-skipping tax exemption was or is allocated by virtue of my death, or the death of my spouse, shall be divided to provide (a) one equal share for Settlor's brother, Edward J. Steinhof, and Settlor's sister, *Page 3 Alice Bouchard, each to be held as a separate trust for their benefit under subsection (2) of this Section A, ARTICLE VII, and (b) one equal share for the issue, collectively, of Settlor's then deceased brother or sister, also to be administered as a separate trust for the benefit of those issue pursuant to subsection (2) of Section A, ARTICLE VII. In the event Settlor's brother or Settlor's sister shall predecease Settlor with no surviving issue, such deceased brother's or sister's share shall be distributed equally amongst the then remaining shares established hereunder.
 * * *
 Section B. Family Trusts.
 (1) Establishment. The rest, residue, and remainder of the Trust Estate shall be divided to provide (a) one equal share for Settlor's brother and Settlor's sister, each to be held as a separate trust for Settlor's brother's and Settlor's sister's benefit under subsection (2) of this Section B of the ARTICLE VII, and (b) one equal share for the then living issue, collectively, of each then deceased brother or sister of Settlor, to be administered for the benefit of those issue pursuant to subsection (2) of Section B of this ARTICLE VII. In the event Settlor's brother or Settlor's sister shall predecease Settlor with no surviving issue, such deceased brother's or sister's share shall be distributed equally amongst the then remaining shares established hereunder."
Pl.'s Ex. A (emphasis added).
On that same date — December 28, 1994 — Decedent also executed a will which, in pertinent part, stated:
 "ARTICLE II
 PAYMENT OF EXPENSES, DEBTS, AND TAXES
 * * *
 Section B. Expenses of Administration and Taxes. My Personal Representative shall pay from my estate, as an expense or cost of the administration of my estate, all estate, inheritance, succession, and other death taxes of any kind and nature, together with any interest and penalties thereon, which may be levied or assessed by reason of my death by the laws of the United States or any state, together with all administration expenses incurred by my estate, whether ancillary or within in the state of my domicile. I expressly require my Personal Representative to adhere to any allocation or charge of the expenses of administration of my estate or *Page 4 
taxes on my estate made in that trust referred to in ARTICLE IV, the limited terms of which for this purpose shall be incorporated herein by this reference. Additionally, I reserve to my Personal Representative the right to recover such taxes as may be imposed on my estate from persons receiving property included in my taxable estate, pursuant to Sections 2207 and 2207A."
Pl.'s Ex. A (emphasis added).
On February 10, 1999 Decedent executed a document entitled "First Amendment of the Robert Steinhof Declaration of Trust." This Amendment kept intact the original terms of the 1994 Trust, with the exception of naming Alice Bouchard as trustee and her daughter, Michelle Murphy, as successor trustee. Aside from this change, the Amendment also reaffirmed the terms of the 1994 Trust and notably it stated:
 "[u]pon the establishment of a separate Trust for Settlor's brother, and Settlor's sister, pursuant to Sections A and B of ARTICLE VII, the person for whom the Trust was established shall serve as sole Trustee of that Trust."
Pl.'s Ex. C (emphasis added).
Finally, on November 5, 2003 Decedent executed a second will. In relevant part the will states:
 "FIRST: I direct my Executrix hereinafter named to pay all of my just debts and funeral expenses as soon after my death as practicable.
 I direct my said Executrix to pay out the principal of my residuary estate as hereinafter given, devised and bequeathed, any and all estate, inheritance, succession, legacy, transfer or similar death taxes, including any interest or penalties thereon, which may be levied or assessed in respect to any property or interest therein passing under this my Last Will and Testament, or any Codicil thereto.
 I specifically direct that such taxes which shall become due and payable in respect to any other property required to be included in my gross estate for the purpose of computation of such taxes shall be apportioned against, and paid out of, such other property."
Pl.'s Ex. D (emphasis added). *Page 5 
The decedent had five siblings: Eugenia Stoutnar, Josephine Steinhof, Laura V. Ferland, Edward J. Steinhof, and Alice Bouchard. However, of those siblings, only Edward J. Steinhof and Alice Bouchard were alive at the time the trust was established. At the time of his death, the decedent's only surviving sibling was Alice Bouchard. Although Alice Bouchard survived Decedent, she has subsequently passed away, leaving a daughter, defendant Michelle Murphy ("Murphy"), who serves as trustee of the decedent's trust, as well as executrix of his estate. The decedent's sisters, Eugenia Stoutnar and Josephine Steinhof, both of whom predeceased him, died without any issue. Laura V. Ferland, who also predeceased her brother, was survived by her three children, defendants Elizabeth Ferland, Charles Ferland and Oscar Ferland (collectively the "Ferlands"). Plaintiffs are the surviving issue of Edward V. Steinhof, the decedent's only brother.
After the decedent's death, a dispute arose among the heirs of his siblings as to who was entitled to a share of his trust estate. Plaintiffs took the position that the trust mandated the residue to be divided into two equal shares: one for Alice Bouchard, who survived the decedent; and one for the heirs of Edward J. Steinhof (i.e. Plaintiffs). They also contended that the trust directed the decedent's estate to pay all estate taxes generated from the trust. Conversely, Defendants asserted that the trust required the residue to be divided into three equal shares: one for Alice Bouchard; one for the heirs of Edward J. Steinhof; and one for the heirs of Laura V. Ferland (i.e. the Ferlands). Additionally, Defendants countered that the trust was responsible for its pro rata share of estate taxes because Decedent's 2003 will specifically required all estate taxes to be apportioned. *Page 6 
In 2006, Plaintiffs filed the instant action seeking declaratory relief with respect to the issues of division of the decedent's trust and apportionment of estate taxes. More specifically, Plaintiffs seek a declaration that they be awarded a one-half share of the trust assets and that Murphy, as executrix of the decedent's estate, be ordered to reimburse the trust for estate taxes which were charged against it. Defendants answered and counterclaimed, seeking a declaration that they be awarded a one-third share of the trust assets, as well as an order requiring the trust to pay its pro rata share of estate taxes. Defendants have filed a motion for summary judgment with supporting memoranda and exhibits. Plaintiffs have filed an objection and a cross motion with a supporting memorandum and exhibits.
 Standard of Review
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings, and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v.Burrillville Racing Assoc., 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal,419 A.2d 297 (R.I. 1980)); Super. R. Civ. P. 56(c). "Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, no material questions of fact exist and the moving party is entitled to judgment as a matter of law." Konar v. PFL LifeIns. Co., 840 A.2d 1115, 1117 (R.I. 2004). Furthermore, the party opposing the motion for summary judgment carries "the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Tanner v. Town *Page 7 Council of East Greenwich, 880 A.2d 784, 791 (R.I. 2005) (quotingLucier v. Impact Recreation, Ltd., 864 A.2d 635, 638 (R.I. 2005)). Only "[w]hen an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in light most favorable to the party opposing the motion, reveals no such [disputed material issue of fact,] the suit is ripe for summary judgment."Industrial National Bank v. Peloso, 121 R.I. 305, 306, 397 A.2d 1312,1313 (1979).
 Law and Analysis I. Division of Trust Corpus
Defendants contend the trust unambiguously provides that the trust corpus should be divided into three equal shares. More specifically, they assert the language in Article VII, Section B of the trust document which states "(b) one equal share for the then living issue,collectively, of each then deceased brother or sister of Settlor, to beadministered for the benefit of those issue pursuant to subsection (2)of Section B of this ARTICLE VII," is tantamount to a class gift that applied equally to all of the decedent's siblings. Thus, they claim that the trust corpus must be divided equally between Alice Bouchard, the only sibling who survived the decedent, as well as the issue of Edward J. Steinhof and the issue of Laura V. Ferland, the decedent's only siblings who predeceased him and had children.
Plaintiffs counter that the trust — when read in its entirety and under the circumstances in which it was executed — reveals the decedent's intention to provide for only Edward Steinhof and Alice Bouchard and/or their issue, not all of siblings as Defendants suggest. Specifically, they note that only Edward Steinhof and Alice Bouchard were alive when the trust was established. Plaintiffs also point to the language *Page 8 
in Article VII, Section A of the trust governing Generation-Skipping Trusts which specifically identifies only Edward Steinhof and Alice Bouchard. They further highlight that the references to "brother" and "sister" in the trust and the 1999 amendment are in singular form. Plaintiffs, therefore, claim the trust corpus must be divided into only two shares.
This court's "primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to law." In reDiBiasio, 705 A.2d 972, 973 (R.I. 1998) (citing Prince v. Roberts,436 A.2d 1078, 1080 (R.I. 1981); Fleet National Bank v. Miglietta,602 A.2d 544, 549 (R.I. 1992)). In order to determine the intention of the testator, "the circumstances existing at the time of the execution of the will are to be considered by the court." In re Gee, 44 R.I. 132, 115 A. 716 (1922). Also, in construing a trust, unless a contrary intent clearly appears, language employed by the settlor must be given its natural and ordinary meaning; and his general intent must be gathered from the trust document or clause as a whole, and not from any single expression apart from the context. Fleet Nat'l Bank, 602 A.2d at 549. "Where the language of a will [or trust] expressly states the testator's [or settlor's] intention, resort to the rules of testamentary construction is without warrant; it is when the language under consideration is susceptible of being read as disclosing alternate or contrary intentions that the rules of construction properly may be invoked." In re DiBiasio, 705 A.2d at 973-74 (citing Goldstein v.Goldstein, 104 R.I. 284, 287, 243 A.2d 914, 916 (1968)). Ambiguous language in a will or a trust presents the trial justice with a mixed question of law and fact. Id. at 974 (citing Prince,436 A.2d at 1080-81).
Again, the relevant language from the trust document in dispute states: *Page 9 
 "the rest, residue, and remainder of the Trust Estate shall be divided to provide (a) one equal share for Settlor's brother and Settlor's sister, each to be held as a separate trust for Settlor's brother's and Settlor's sister's benefit under subsection (2) of this Section B of the ARTICLE VII, and (b) one equal share for the then living issue, collectively, of each then deceased brother or sister of Settlor, . . . to be administered for the benefit of those issue pursuant to subsection (2) of Section B of this ARTICLE VII."
After reviewing the trust document in its entirety, it is clear that the decedent intended to provide for only Edward J. Steinhof and Alice Bouchard and their issue. As an initial matter, their names are the only names that appear in the trust document. Moreover, while Defendants' interpretation of this section of the trust agreement, by itself, may lead one to believe that the decedent intended to provide for the issue of all his siblings who predeceased him, as our Supreme Court has directed, this Court must gather his intent from the entire document.
Notably, the relevant passage states "and (b) one equal share for the then living issue, collectively, of each then deceased brother or sister of Settlor, . . . to be administered for the benefit of those issuepursuant to subsection (2) of Section B of this ARTICLE VII. "Subsection (2) of Section B goes on to state that the "trustee shall distribute only so much income . . . for the proper health, education, maintenance, and support of Settlor's brother or Settlor's sister. . . . Likewise, Subsection (4) of Section B states "Settlor's brother or . . .sister, or the issue of Settlor's brother and . . . sister. . . ." In other words, all references to any of the decedent's siblings are singular in form. Thus, not only is Laura V. Ferland's name omitted from the trust document, but there is not even a single reference to the word "sisters" to indicate that the decedent intended to provide for all of his sisters. Thus, with respect to this issue, Defendants' motion for summary judgment is denied and Plaintiffs' cross motion is granted. *Page 10 
 II. Estate Tax Apportionment
With respect to the issue of taxes, Defendants argue that pursuant to the state's estate apportionment act, R.I. Gen. Laws § 44-23.1-2, in order to avoid apportionment of estate taxes, a decedent's will must contain a directive against apportionment. Accordingly, Defendants assert because the decedent's 2003 will expressly mandates apportionment and does not direct the executor to pay the estate taxes generated from the trust, all estate taxes must be apportioned.
Conversely, Plaintiffs assert that the trust specifically directs the estate to pay all estate taxes. Moreover, they note that in the trust document, the decedent specifically reserved the right to amend or alter the trust by following a specific procedure. Although the decedent executed a new will in 2003, Plaintiffs assert that it did not alter the terms of the trust because it did not comply with the amendment procedure outlined in the trust document. Finally, they argue that the 2003 will's tax clause applies only to property passing under the will because it does not clearly and unambiguously state that it embraces the property held in the decedent's trust. Thus, Plaintiffs contend that the estate must pay the estate taxes generated from the trust.
Under the version of the Uniform Estate Tax Apportionment Act adopted by the General Assembly in 1971, § 44-23.1-2 states:
 "[u]nless the will provides, the tax is apportioned among all persons interested in the estate. The apportionment is made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax are used for that purpose."
Furthermore, the act defines "Person interested in the estate" as "any person, including a personal representative, guardian, or trustee, entitled to receive, or who has received, *Page 11 
from a decedent while alive or by reason of the death of a decedent any property or interest in property included in the decedent's taxable estate[.]" Id. at § 44-23.1-1 (4). A review of relevant case law indicates that our Supreme Court in this jurisdiction has been called upon to interpret this statutory scheme.
However, a number of commentators and other courts interpreting similar statutes have stated that such apportionment acts are mandatory in nature, and apply unless the testator directs otherwise in the will.See Maurice T. Brunner, Annotation, Construction and Application ofStatutes Apportioning or Prorating Estate Taxes, 71 A.L.R. 3d. 247, 268-69 (1976); 42 Am. Jur. 2d Inheritance, Estate, and Gift Taxes § 312 (2000); see also In re Estate of Kyreazis, 701 P.2d 1022, 1024 (N.M. 1984); Bushee v. Bushee, 303 N.W.2d. 320, 322 (N.D. 1981); In re Estateof Huffaker, 641 P.2d 120, 121 (Utah 1982); In re Estate of Kelly,584 P.2d 640, 641 (Colo.Ct.App. 1978); In re Estate of Fender,422 N.E.2d 107, 110 (Ill.App.Ct. 1981); In re Estate of Roe, 426 N.W.2d 797, 800
(Mich.Ct.App. 1988).
In the instant case, Defendants correctly point out that the controlling will — the 2003 will — does not specifically direct against apportionment. In fact, the will's "tax clause" explicitly mandates apportionment and states:
 "I specifically direct that such taxes which shall become due and payable in respect to any other property required to be included in my gross estate for the purpose of computation of such taxes shall be apportioned against, and paid out of, such other property."
Thus, it would seem that the estate taxes generated from the trust must be apportioned pursuant to the relevant statutory scheme.
Nevertheless, Plaintiffs claim that the 1994 Trust Document
specifically provides that the trust would only become liable for payment of taxes in the event, and only to the *Page 12 
extent, that said taxes exceeded the assets of Decedent's testamentary estate. Moreover, they cite Union Trust Co. v. Watson, 76 R.I. 225 (R.I. 1949), for the proposition that if a trust document identifies a specific amendment procedure, then the amendment is effective only when it is executed in the manner prescribed. Accordingly, they maintain that the provisions of the 2003 will did not alter the "tax provision" of the trust document because it failed to satisfy the amendment procedure previously cited. However, a closer examination of the relevant sections of the trust documents and both wills executed by Decedent reveals a flaw in Plaintiffs' assertion.
It is important to note that the trust document and Decedent's 1994 will were executed in conjunction with one another. Again, in relevant part, the "tax clause" of the 1994 will provided:
 "[m]y Personal Representative shall pay from my estate, as an expense or cost of the administration of my estate, all estate, inheritance, succession, and other death taxes of any kind and nature, together with any interest and penalties thereon, which may be levied or assessed by reason of my death by the laws of the United States or any state, together with all administration expenses incurred by my estate, whether ancillary or within in the state of my domicile. . . ."
Furthermore, the trust document states:
 "Trustee shall pay to the Personal Representative of my estate, as a cost or expense of administration of my estate, such amounts as are certified in writing by my Personal Representative as due for estate, death, inheritance, transfer, income, and excise taxes (specifically excluding generation-skipping taxes), including interest and penalties thereon, if any, which are payable to any state taxing authority or the United States, and which exceed the liquid assets of my estate subject to administration by my Personal Representative
. . . Any property of the Trust Estate existing on the death of my spouse and which was or is at that time, or earlier, qualified for exemption from generation-skipping tax shall not bear any estate tax until non-exempt property has been used to satisfy estate taxes associated with my death or the death of my wife." *Page 13 
When these clauses are read together, they appear to suggest that — pursuant to the terms of the will — the estate was required to pay all estate taxes generated by reason of the decedent's death, and — pursuant to the terms of the trust document — the trustee was required to pay for the tax liabilities, if any, which exceeded the estate's assets. While this may have been the decedent's intention when he executed those documents in 1994, it is undisputed that the 1994 will was revoked by implication when he executed the 2003 will. As previously noted, the 2003 will specifically directs apportionment of estate taxes. Clearly, the decedent was not required to follow the amendment procedure outlined in the 1994 trust document in order to execute a new will. Thus, before addressing the merits of the legal argument raised by Plaintiffs, the Court first must determine if the trust's "tax provision" contains a clear and unambiguous directive against apportionment.
After a thorough review of the relevant provisions of the trust, the Court is unable to find any language which expressly exonerates the trust from the payment of death taxes. Indeed, the "tax provision" merely states that trustee shall be required to pay any estate taxes which exceed the estate's assets, and that any property which qualified for an exemption from the generation-skipping tax should not bear any estate taxes until non-exempt property has been used to satisfy estate taxes associated with the decedent's death. Clearly, this language, by itself, does not support Plaintiffs assertion that the decedent's estate must pay the trust's estate taxes and, thus, their legal argument is rendered moot. Accordingly, with respect to the issue of apportionment of estate taxes, Defendants' motion for summary judgment is granted, and Plaintiffs' cross motion is denied. *Page 14 
 Conclusion
On the issue of interpretation of the trust document, Defendants' motion for summary judgment is denied and Plaintiffs' cross motion is granted. As for the issue of the apportionment of estate taxes, Defendants' motion for summary judgment is granted and Plaintiffs' cross motion is denied.